William Frank NEWMAN, Movant,

v.

Polly Elkin NEWMAN, Respondent.

Supreme Court of Kentucky.

Feb. 12, 1980.

Rehearing Denied May 13, 1980.

David F. Broderick, Cole, Harned & Broderick, Bowling Green, for movant.

Whayne C. Priest, Jr., English, Lucas, Priest & Owsley, Bowling Green, for respondent.

STERNBERG, Justice.

This appeal involves the division of marital property, the assignment of nonmarital property, the award of maintenance and the award of child support. On November 3, 1977, the trial judge entered a decree dissolving William and Polly's marriage, disposing of their property, awarding maintenance to Polly, and ordering William to pay child support. On December 8, 1977, the same trial judge entered an amended decree

making changes in the disposition of the property and in the awarding of maintenance and child support. Polly appealed to the Court of Appeals of Kentucky. On June 26, 1979, review was granted by this court.

The issues are: (1) did the chancellor err in the amount of maintenance, and (2) did the court err in fixing the amount of child support?

### Maintenance

■ In the fixing of maintenance the trial court must take into consideration the assignment of property made pursuant to the provisions of KRS 403.190 and the factors delineated in KRS 403.200. As a matter of fact, there must be a division of property before considering the amount of maintenance. *Farmer v. Farmer*, Ky., 506 S.W.2d 109 (1974).

The parties were married on August 13, 1955, and lived together as husband and wife until their separation on September 2, 1976. Polly was then 42 years of age and William was 45. To their marriage were born two children, Janet and David, who at the time of their parents' separation lived with their mother. Janet was then 19 years old and David was 12. At the time of their marriage William and Polly had very little of this world's goods. At the time of their separation their estate, as the result of team effort, by inflation and economic conditions, by gifts and by inheritance, was valued in excess of $700,000. Each of them had worked long and hard during their married life to attain this position and accumulate this estate. Polly has one year of secretarial-school training. She worked as a waitress and at other times as a bookkeeper at Citizens National Bank to help put William through college. William is a real estate appraiser and broker and an assistant professor at Western Kentucky University. Polly has an ulcer and high blood pressure, which requires daily medication, and at the time of separation was recovering from breast surgery and very much limited in her physical activities. Relatively speaking, she is untrained and unskilled in the business world. William has no apparent illness and is well established in business. The trial court found that the accumulation of the estate was primarily the result of William's efforts and the marital property was ordered to be divided 60%-40% in his favor. The trial judge not only made extensive findings of fact and conclusions of law, in addition thereto he made extensive amended findings of fact and conclusions of law.

■ First of all, we need to consider the formula used by the chancellor to distinguish marital property from nonmarital property. We hasten at this point to add, however, that as used in KRS 403.190 the word "property" includes equity in property. The proper division of property is crucial when the trial court considers the award of maintenance and the award of child support. For example, one of the criteria for justifying the amount of an award for maintenance to Polly is the lack of sufficient property, including marital property, that had been apportioned to her to provide for her reasonable needs. *Casper v. Casper*, Ky., 510 S.W.2d 253 (1974); KRS 403.200. We need, therefore, not only to determine whether the formula used by the trial court in distinguishing marital property from nonmarital property is proper, but to determine whether the formula was properly applied.

■ The trial court held that the interest of William and the interest of Polly in the fair market value of the property at the time of disposition (dissolution of marriage) were the same percentages as their respective contributions to the total equity in the property. To arrive at the value of the interest of each, the trial court at the time of the disposition separated the marital property from the nonmarital. Insofar as the residence is concerned, the lot on which the house was built was inherited by William and had a nonmarital acquisition value of $3,000. To this was added the sum of $52,000, representing an inheritance to William (nonmarital), and $13,000 was borrowed and used in the construction of the dwelling (marital). Thus there was an in-

vestment of $68,000. The court then divided the $13,000 by $68,000 and arrived at the percentage value of the marital interest at the time of acquisition. This result was 19.12%, leaving the percentage value of the nonmarital interest at the time of acquisition at 80.88%. The fair market value at the time of disposition (dissolution of marriage) was $125,000. The money interest of the marital property therefore would be 19.12% × $125,000 or $23,900. The money interest of the nonmarital property would be 80.88% × $125,000 or $101,100. The marital property was divided 60% to William and 40% to Polly. Therefore, the money interest of Polly would be 40% of $23,900 or $9,560, and the money interest of William would be 60% of $23,900 or $14,340. Neither party faults the trial judge in his finding that the marital value in the property was $13,000 or that the interest of the nonmarital property was $55,000 ($3,000 + $52,000).

Polly argued that the proper disposition of the property would have been to reimburse William for the full amount of his contribution ($55,000) and the difference, which would be marital property, be divided as other marital property (60%-40%). This method would have increased Polly's award from $9,560 to $28,000 and would have reduced William's award from $115,440 to $97,000. In other words, Polly would have received $18,440 more and William, accordingly, would have received $18,440 less. The trial court did not concur in that formula. The Court of Appeals did not concur in that formula, and neither does this court. We do concur in the formula used by the trial court in arriving at the monetary value of the interest of the parties.

In order to determine the propriety of the award of maintenance, we need to know the financial resources of the parties. By using the approved formula, the chancellor computed the value of the estate and catalogued it as follows:

| | William | Polly |
|---|---|---|
| Nonmarital personal | $ 14,383.03 | $ 11,345.00 |
| Nonmarital real estate | 280,337.98 | 150,000.00 |
| Marital personal | 58,601.00 | 30,984.87 |
| Marital real estate | 94,565.86 | 68,000.00 |
| Total division– | $447,887.87 | $260,329.87 |

Counsel for both parties argue at length over the relation of the financial award of maintenance to the pendente lite award. Irrespective of the arguments of counsel, we have as our guide and polestar the criterion that Polly is entitled to maintenance in such sum that, when added to her other source of income, would be sufficient to provide for her in the manner to which these parties have become accustomed. *Casper v. Casper*, Ky., 510 S.W.2d 253 (1974).

Polly was unable to establish with any degree of certainty the amount of money that she would need to maintain herself in the proper manner. On the other hand, William, with particularity, established that he spent, for the upkeep of his wife and infant son in the family residence, the sum of $1,200, more or less, per month. Polly was awarded the right to the use of the family residence along with David until he reaches his nineteenth birthday, unless David should become emancipated or should permanently leave the family home. Also, William is required to pay all of the major expenses for the upkeep, insurance and taxes on the family residence. He was ordered to pay for Polly's needs until she has trained herself and has found employment.

Polly was awarded the income-producing real estate known as 1068 Laurel Avenue and 615 Cabell Street. The Laurel Avenue property was encumbered with a mortgage, the unpaid balance of which was $5,070.45, with monthly mortgage payments of $257.42. The Cabell Street property was unencumbered. Counsel for Polly argues that the trial judge erred in the treatment of the marital value of 1068 Laurel Avenue. We do not interpret the award in that manner. The market value of this property was $35,000; the unpaid balance of the mortgage was $5,070.45; and the equity, the difference between these two figures, was $29,929.55. The computation of the marital value of the interest of the parties was calculated by the chancellor on the amount of the equity and not on the fair market

value. The interest of William, therefore, would be 60% of $29,929.55 or $17,957.73, and the interest of Polly 40% of $29,929.55 or $11,971.82. Had the chancellor used the fair market value ($35,000) in computing the monetary value of the marital interest of the parties, it would have resulted in Polly's paying a part of the mortgage. As to the monthly payment of maintenance in the sum of $257.42, we construe the award to have been such a sum which, together with income that she may have from her own efforts, would be sufficient to maintain herself.

The trial court did not award Polly the sum of $5,070.45, payable at the rate of $257.42 monthly. What the trial court did was to take the amount of the monthly payment on the mortgage as a criterion to measure the income needed by Polly for her proper upkeep and support. The chancellor could just as easily have used some other figure on which to predicate the award of maintenance, but having evaluated the estate, he selected a figure that would help Polly free herself from the burden of this mortgage. The trial court used $257.42, for which we do not fault him but appreciate the court's ingenuity in handling this parcel of property and the award of maintenance in this manner.

In support of Polly's argument, she charges that the court properly assigned the Laurel Avenue property an equitable value of $29,929.55; however, she charges that in the allocation the court erroneously applied the fair market value of $35,000, when in the allocation the fair market value should have been reduced by the unpaid balance of the mortgage. In other words, Polly states that since the balance due on the mortgage was utilized in the property division, it cannot later be declared maintenance.

■ The $5,070.45 was not used in the award of maintenance. The maintenance was an open-end award of $257.42 per month. The payment of $257.42 per month would assure Polly of the payment on the mortgage at least while she was training herself for her future ability to produce an income and relieve her of the burden of

seeing to this payment. The trial judge said that the rental income, together with the income that Polly will have from other sources, would be adequate to maintain herself. From the record it appears that William has been considerate of the financial needs of Polly and his son David. From the wording of the maintenance order, it lends itself to the understanding that William will be under as great an obligation as he was prior to the dissolution of the marriage. Almost we would say that William has signed a blank check to be used by Polly for her upkeep. The award of maintenance is not set out with that degree of certainty needed; however, the trial court is in a better position than this court to ferret out the hidden pitfalls and to remedy them. After all, the amount of the award of maintenance is within the discretion of the chancellor and the exercise of that discretion will not be set aside unless it is clearly erroneous. *Ballard v. Ballard*, Ky., 411 S.W.2d 330 (1967). We do not find the maintenance award to be erroneous. A just settlement of the property affairs between William and Polly is the object of the court. *Logan v. Logan*, Ky., 432 S.W.2d 34 (1968). This we believe the trial court did.

## Child Support

■ The chancellor awarded $50.00 per week as child support. When considered separate and apart from the other provisions of the decree, the award may appear inadequate. It cannot be considered separate and apart, but the whole award must be considered together. It goes without cavil that David, having become accustomed to a standard of living above and beyond that of many young men, should not be reduced to an appreciable less standard, especially when his father spends at least $500 per month for airplane maintenance. We need, therefore, to analyze the award.

William is ordered to pay all of David's medical, dental, pharmaceutical and hospital expenses, to provide insurance coverage, and to pay all other extraordinary but necessary expenses in his proper support of maintenance of David. This is a true Moth-

er Hubbard award if there ever was one. When we consider the award in light of what William is required to do relative to David and to Polly, insofar as it affects David, we construe the responsibility of William to be the same as if there had not been a dissolution of marriage. It appears to this court that the $50.00 per week is the topping on the cake. $50.00 per week for David to spend anyway he chooses is not the all terrible and inadequate award that counsel would have this court believe it to be.

In the area of child support, as well as in the area of maintenance, there are ambiguities which this court will not at this time undertake to interpret. The chancellor can control the award as from time to time he may deem necessary and proper. We do not find the amount of child support to be unreasonable.

The decision of the Court of Appeals is reversed and the judgment of the Warren Circuit Court is affirmed.

All concur.