Jeffrey Wayne TRAVIS, Appellant,

v.

Lora Sue TRAVIS, Appellee.

No. 1998–SC–0525–DG.

Supreme Court of Kentucky.

Nov. 21, 2001.

Gary R. Haverstock, Haverstock, Bell & Pitman, Murray, Counsel for Appellant.

Rita Lynn Cartee, Olive Hill, James E. Story, Eddyville, Counsel for Appellee.

## MEMORANDUM OPINION
## OF THE COURT

### *AFFIRMING*

### I. ISSUE

This dissolution of marriage action presents a single issue for our consideration. Appellant made a $7,500.00 nonmarital contribution towards the total cost of approximately $47,000.00 used to acquire and remodel the marital residence. Seven years later, after the parties separated but prior to dissolution, a fire destroyed the residence and casualty insurance paid $63,000.00 for the loss. The trial court assigned $20,560.44 to Appellant as his nonmarital portion of the insurance proceeds. The Court of Appeals concluded that Appellant had failed to show his $7,500.00 contribution appreciated as a result of general economic conditions, reversed the judgment, and directed the trial court to assign only $7,500.00 to Appellant as his nonmarital share of the proceeds with the remainder divided as marital property. Was Appellant required to show that his nonmarital contribution increased in value as a result of general economic conditions? Because Appellant failed to rebut the KRS 403.190(3) presumption that all property acquired during the marriage is marital property, the insurance proceeds in excess of Appellant's initial nonmarital contribution are marital property.

### II. BACKGROUND

Following their marriage on August 29, 1987, the parties jointly obtained a $39,368.90 loan from Fredonia Valley Bank and used the proceeds from that loan and $7,500.00 of Appellant's premarital property to purchase a house, relocate the house onto eleven (11) acres of real property owned separately by Appellant,[1] and to make improvements to the house including the addition of a second story. Appellee made additional improvements to the interior of the house by painting, wallpapering, and staining. Because of financial difficulties during the marriage, the parties did not reduce the loan's principal balance.

In August of 1994, after the parties separated, but before dissolution, a fire destroyed the house, and casualty insurance paid $63,000.00 for the structure. With the parties' agreement, the trial court entered an order directing that $39,635.86 of the insurance proceeds be used to pay off

---

1. As Appellant had inherited the property, the Domestic Relations Commissioner (DRC) appropriately found that "the eleven acres is ... nonmarital property which shall be restored to him." *See* KRS 403.190(2)(a):

   "[M]arital property" means all property acquired by either spouse subsequent to the marriage except:

   "(a) Property acquired by gift, *bequest, devise, or descent* during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom[]."

   *Id.* (emphasis added). Appellee does not dispute the DRC's finding or the trial court's assignment of this property to Appellant as his nonmarital property.

the loan's outstanding balance and that the remainder of the insurance proceeds, $23,364.14, be placed into an escrow account for distribution by the trial court. The parties stipulated that $7,500.00 of these proceeds represented Appellant's nonmarital contribution, but continue to disagree as to whether any of the remaining $15,864.14 could be characterized as Appellant's nonmarital property. Accordingly, the primary issue before the trial court thus concerned how to distribute this $15,864.14 disputed portion of the insurance proceeds.

Appellant argued that the trial court should divide the disputed insurance proceeds into marital and nonmarital shares using the formula articulated in *Brandenburg v. Brandenburg* [2]—which would entitle him to the lion's share of those proceeds as appreciation on his $7,500.00 nonmarital contribution. Appellee argued that Appellant should receive only $7,500.00 as nonmarital property, and that under the holding of *Goderwis v. Goderwis*,[3], the disputed amount resulted from the joint efforts of the parties and therefore constituted marital property that the trial court should equitably distribute between the parties.

The Commissioner agreed with the Appellant and recommended dividing the proceeds using the so-called "*Brandenburg* formula" [4]:

### FINDINGS

. . .

2. Both parties stipulated that Petitioner [Appellant] made a $7,500.00 nonmarital contribution for renovation and construction of a house which was an improvement made on the nonmarital

eleven acres. The evidence indicated that the total amount of money expended on the house was $46,868.90 which amount included Petitioner's $7,500.00 nonmarital contribution in addition to the loan from Fredonia Valley Bank in the amount of $39,368.90. Paul Riley, President, of Fredonia Valley Bank testified that there had not been any principal reduction of the debt during the parties marriage and that the balance owed plus interest was in excess of the original loan. Mr. Riley further testified that upon receipt of the fire loss proceeds from the insurance company, the mortgage indebtedness to Fredonia Valley Bank in the amount of $39.635.86 was paid in full.

The Respondent's [Appellee's] counsel has argued that *Goderwis v. Goderwis*, Ky.App. [sic] 780 S.W.2d 39 (1989) should be applied to the circumstances surrounding the improvements made by the parties on Petitioner's nonmarital property. The *Goderwis* decision deals with the valuation of an on going [sic] auto repair business which had increased in value during the marriage due to the joint efforts of the parties. The issue in *Goderwis* deals with whether or not the increase in value of a business owned by a spouse prior to marriage which increased in value during the marriage could be awarded to the wife on the basis of her contribution as a homemaker. The court held in the *Goderwis* decision, that an increase in the value during the marriage could be awarded to the wife when it was shown that she made contributions to the marriage as a homemaker. The Commissioner finds that the *Goderwis* decision dose [sic] not apply to the case at hand

2.  Ky.App., 617 S.W.2d 871 (1981).

3.  Ky., 780 S.W.2d 39 (1989).

4.  *See Brandenburg v. Brandenburg, supra* note 2 at 872–874.

inasmuch as the valuation was not an ongoing business, that this matter involved improvements to nonmarital property which was dealt with specifically by the court in *Brandenburg v. Brandenbury* [sic], Ky.App., 617 S.W.d [sic] 871, (1981). Under these circumstances the Commissioner will utilize the formula of *Brandenburg, supra* in determining the nonmarital and marital contribution of each party.

Respondent testified that during the marriage that she had made improvements to the house which included painting and wall papering, which the Commissioner finds to have a value of $1,000.00. In applying the *Brandenburg* formula to the nonmarital and marital contributions, the Commissioner determines that the Petitioner's nonmarital contribution is $7,500.00 and the marital contribution is $1,000.00 for a total contribution of $8,500.00. Therefore, the marital contribution of $1,000.00 would be 12% of the total contribution and the nonmarital contribution of $7,500 would be 88% of the total contribution under the *Brandenburg* formula. The nonmarital percentage of the balance of the house insurance proceeds from the fire loss would be $20,560.44. The marital percentage under the *Brandenburg* formula would be $2,803.70 of which the Respondent would be entitled to $1,401.85. The Commissioner finds that the remaining house proceeds of $23,064.14 after payment of the $39.635.86 to Fredonia Valley Bank, shall be divided $21,962.20 to Petitioner and $1,401.85 to Respondent.

. . .

*CONCLUSIONS AND ORDER*

. . .

2. The remaining house insurance proceeds in the amount of $23,064.14 shall be divided as follows:

a. Petitioner shall receive $21,962.29 as his nonmarital and marital portion of the house insurance proceeds.

b. Respondent shall receive $1,401.85 as her marital portion of the house insurance proceeds.

Appellee filed exceptions to the Commissioner's report and specifically challenged the Commissioner's finding that *Brandenburg* governed the distribution of the disputed portion of the insurance proceeds. After allowing the parties to argue the issue, the trial court denied the exceptions and entered a judgment adopting the Commissioner's report.

On direct appeal, the Court of Appeals reversed and remanded with instructions for the trial court to return Appellant's $7,500.00 nonmarital contribution and to divide the disputed insurance proceeds as marital property:

In the present case, appellee [Jeffrey Travis, now Appellant] was awarded $7,500 in nonmarital property from the insurance proceeds. The issue presented is whether appellee is entitled to a percentage of the proceeds proportionate to his nonmarital contribution or if the proceeds should be divided as marital property.

If the value of nonmarital property increases following the marriage as a result of general economic conditions, the increase is deemed to be nonmarital. If the value increases, however, because of the joint efforts of the parties, it is divisible marital property. *Goderwis v. Goderwis*, ky. [sic], 780 S.W.2d 39, 40 (1989). There is no evidence that appellee would have realized such a dramatic increase in his initial $7,500 contribution based on economic factors alone. During the marriage, the parties made sig-

nificant improvements to the home including the addition of a second story made possible by the marital debt incurred and the parties' joint efforts. Excluding the additional $7,500 invested as nonmarital property, there is no evidence presented to overcome the presumption that the insurance proceeds are marital property. KRS 403.190(3).

The trial court erred in applying the *Brandenburg* formula. It should have simply awarded appellee $7,500 as his nonmarital contribution and the remainder divided as marital property in just proportions. KRS 403.190.

This case is reversed and remanded for proceedings consistent with this opinion.

Appellant sought discretionary review in this Court, which we granted, and we now affirm the decision of the Court of Appeals.

### III. DIVISION OF REMAINING PROCEEDS

■ The disposition of property in a dissolution of marriage action is governed by statute:

(1) In a proceeding for dissolution of the marriage ..., the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:

(a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;

(b) Value of the property set apart to each spouse;

(c) Duration of the marriage; and

(d) Economic circumstances of each spouse when the division of property is to become effective[ ] ....

(2) For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

(a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

(b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation;

(d) Property excluded by valid agreement of the parties; and

(e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

(3) All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.[5]

■ Thus, in dissolution of marriage actions, a trial court's division of the par-

5. KRS 403.190.

ties' property[6] requires a three-step process: (1) the trial court first characterizes each item of property as marital[7] or nonmarital;[8] (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties.

Here, the Court of Appeals found that the trial court erred at the outset of the property division process when it found that a portion of the disputed insurance proceeds constituted appreciation on Appellant's $7,500.00 nonmarital contribution and, using the *Brandenburg* formula, assigned a portion of the amount in dispute to Appellant as his nonmarital property under KRS 403.190(2)(e). The Court of Appeals concluded that Appellant had not introduced evidence sufficient to overcome the KRS 403.190(3) presumption that "[a]ll property acquired by either spouse after the marriage and before a decree of legal separation is ... marital property."[9] After a review of the record, we agree with the Court of Appeals that Appellant failed to rebut the presumption that the disputed proceeds were marital property, and therefore the trial court erred in assigning any portion of the disputed proceeds to Appellant as his nonmarital property.

An item of property will often consist of both nonmarital and marital components, and when this occurs, a trial court must determine the parties' separate nonmarital and marital shares or interests in the property on the basis of the evidence before the court. Kentucky courts have typically applied the "source of funds" rule[10] to characterize property or to determine parties' nonmarital and marital interests in such property.[11]

6. Previous attempts by Kentucky's appellate courts to define "property" may have contributed to the want of consistent guidelines for determining the marital and nonmarital interests in property. *See Robinson v. Robinson,* Ky.App., 569 S.W.2d 178, 181 (1978) (overruled on other grounds by *Brandenburg v. Brandenburg, supra* note 2) ("As used in KRS 403.190 in referring to restoration of the property of each spouse, *the word 'property' means equity." Id.* (emphasis added)); *Newman v. Newman,* Ky., 597 S.W.2d 137, 138 (1980) ("We hasten at this point to add, however, that as used in KRS 403.190 *the word 'property' includes equity in property." Id.* (emphasis added)). KRS Chapter 403 does not separately define "property" and we can find no basis for defining "property" as used in KRS 403.190 as anything other than its ordinary meaning. Accordingly, the word "property," as used in this statute, refers to a determinate thing or an interest in a determinate thing. *See* BLACK'S LAW DICTIONARY 1232 (7th Ed.1999) (defining "property" as "[t]he right to possess, use, and enjoy a determinate thing (either a tract of land or a chattel)[.]" *Id.*).

7. Courts use the phrases "marital property" and "community property" interchangeably to describe the parties' property subject to equitable division by the court. The latter phase is more common in other jurisdictions.

8. Courts use the words "nonmarital" and "separate" interchangeably to describe the property assigned to each party as "each spouse's property." "Nonmarital" is the more common usage in this jurisdiction; while "separate," is the more common usage in other jurisdictions with similar statutes.

9. KRS 403.190(3).

10. The "source of funds rule" simply means that the character of the property, i.e., whether it is marital, nonmarital, or both, is determined by the source of the funds used to acquire property. Louise E. Graham & James E. Keller, 15 Kentucky Practice (Domestic Relations Law) §§ 15.61 & 15.62 (2nd Ed.1997) (hereinafter "Graham & Keller"); Louise E. Graham, Using Formulas to Separate Marital and Nonmarital Property: A Policy Oriented Approach to the Division of Appreciated Property on Divorce, 73 Ky. L.J. 41, 44 (1984–85) (hereinafter "L. Graham").

11. *See Newman v. Newman, supra* note 6 at 138 (approving "[t]he trial court [holding] that the interest of William and the interest of

When the property acquired during the marriage includes an increase in the value of an asset containing both marital and nonmarital components, trial courts must determine from the evidence *"why the increase in value occurred"* [12] because "where the value of [non-marital] property increases after marriage due to general economic conditions, such increase is not marital property, but the opposite is true when the increase in value is a result of the joint efforts of the parties." [13] KRS 304.190(3), however, creates a presumption that any such increase in value is marital property, and, therefore, a party asserting that he or she should receive appreciation upon a nonmarital contribution as his or her nonmarital property carries the burden of proving the portion of the increase in value attributable to the nonmarital contribution. [14] By virtue of the KRS

Polly in the fair market value of the property at the time of disposition (dissolution of marriage) were the same percentages as their respective contributions to the total equity in the property." *Id.*); *Robinson v. Robinson, supra* note 6 at 181 ("If either spouse was the owner of property subject to indebtedness prior to the marriage, the equity in that property shall be considered nonmarital property at the time of separation in that proportion which this equity bore to the value of the property at the time of the marriage."*Id.*); *Woosnam v. Woosnam*, Ky.App., 587 S.W.2d 262, 263–4 (1979):

> [T]he chancellor should first determine, using the formula in *Robinson*, the value of Patricia's nonmarital interest in the Surrey Drive property at the date it was sold. Then, a new ratio should be determined with the value of Patricia's nonmarital interest in the Surrey Drive property being the numerator and the value or purchase price of the Carriage Drive property being its denominator. The new ratio should then be applied to the value of the Carriage Drive property at the date of separation to determine the value of Patricia's nonmarital interest to be restored to her. The method described above permits the spouse having a nonmarital interest in property at the date of marriage to realize additional appreciation in the value of that interest after reinvestment, in proportion to its value at the date of separation.

*Id.; Brandenburg v. Brandenburg, supra* note 2 at 872; *Goderwis v. Goderwis, supra* note 3 at 41; Graham & Keller, *supra* note 10 at §§ 15.61 & 15.62.

12. *Goderwis v. Goderwis, supra* note 3 at 40 (emphasis in original).

13. *Id. See also Mercer v. Mercer*, Ky., 836 S.W.2d 897, 899–900 (1992) ("[A] mere increase in value of nonmarital property remains nonmarital." *Id.* at 900); *Marcum v. Marcum*, Ky., 779 S.W.2d 209, 210–211 (1989) ("There is a distinction between an increase in value of property which occurs without effort on the part of the owners and the increase in the value of property that occurs as a result of the efforts of the parties." *Id.*); *Stallings v. Stallings*, Ky., 606 S.W.2d 163, 164 (1980) (" '[T]eam or joint efforts' ... may convert the increase in value of non-marital property into marital property." *Id.*); *Smith v. Smith*, Ky., 497 S.W.2d 418, 419 (1973) ("[I]f there was an increase in value of [the husband's nonmarital] property after the marriage due to team effort as contrasted with an increase caused by general economic conditions, she is entitled to share in that increase." *Id.*); *Sharp v. Sharp*, Ky., 491 S.W.2d 639, 644 (1973) ("The increase in value not attributable to 'team effort' or 'team funds' follows the property." *Id.*).

14. *See Angel v. Angel*, Ky.App., 562 S.W.2d 661, 663 (1978):

> That portion of the proceeds from the sale of the Bethlehem Church farm attributable to the investment of Ester Angel's $1,400.00 inheritance constituted nonmarital property. The payment of the balance of the purchase price and the improvements were the result of the "team effort" of the parties during the marriage. That portion of the proceeds from the sale of the Bethlehem Church property attributable to the improvements and the payment of the balance of the purchase price for the land constituted marital property. *Unfortunately, there is no evidence in the record indicating the value of the improvements. Consequently, Ester Angel has not demonstrated that there was any increase in the value of the investment of his $1,400.00 inheritance. Except for the initial investment of his*

403.190(3) presumption, the failure to do so will result in the increase being characterized as marital property.[15]

The asset at issue in this case is the parties' house—which was acquired during their marriage—and the evidence at trial showed that this house was purchased, renovated, and improved, in part, with Appellant's $7,500.00 nonmarital property. Of course, Appellant's $7,500.00 nonmarital contribution was not the only investment made in the property—the parties also made marital contributions in the form of the proceeds from a marital debt in the amount of $39,368.90[16] and Appellee's "sweat equity" investment which the trial court valued at $1,000.00.[17] At dissolution, the value of the house was represented by the $63,000.00 insurance settlement which was greater than the amount of nonmarital funds, loan proceeds, and the value of the "sweat equity" the parties had invested in

---

*$1,400.00 inheritance, Ester Angel has not overcome the presumption that the proceeds of the sale of the Bethlehem Church farm constituted marital property.*
Id. (citations omitted and emphasis added).

**15.** *See Id.*

**16.** *See* John W. Potter and Ellen B. Ewing, "Apportioning Marital and Non-Marital Interests in a Single Asset," 9 Ky. Bench & Bar, Vol. 9, No. 2, at 14, 15 (April 1983) (arguing that courts should "include the entire loan as a marital contribution and require that the marital estate discharge the balance." *Id.*) The mortgage loan was a joint obligation of the parties, incurred during the marriage, obtained upon their joint credit, and secured by the parties' marital residence. Repayment was anticipated from marital funds, and it was these proceeds that were primarily used to acquire and improve the marital residence. As such, the loan was clearly a marital debt, and the loan proceeds fall within the statutory criteria for a marital contribution. *See* KRS 403.190(2)(b) (" '[M]arital property' means all property *acquired* by either spouse subsequent to the marriage." *Id.* (emphasis added)); *Daniels v. Daniels*, Ky.App., 726 S.W.2d 705, 706–7 (1986); *Bruton v. Bruton*, Ky.App., 569 S.W.2d 182 (1978) (finding a debt secured by one party's separate collateral to be a marital debt "in light of the undisputed fact that the loan proceeds were used for marital purposes generally and in certain instances to provide personal benefit to [the other party]." *Id.* at 182).

**17.** The trial court cited *Brandenburg* as support for its determination that Appellee's "sweat equity" constituted a marital contribution to the increase in the equity of their marital residence. While we agree with this determination, we do not find support for it in *Brandenburg*. In fact, the *Brandenburg* court specifically rejected the concept that a non-monetary contribution, such as sweat equity, could result in an increase in overall equity:

> The contribution of either spouse of *other than marital or nonmarital funds* shall not be considered in the increase of equity of the property, and any dicta or other language to the contrary in *Robinson v. Robinson*, Ky.App., 569 S.W.2d 178 (1978), is specifically overruled. For example, the contribution of one spouse as homemaker, etc., shall be considered only in affixing the percentage of the marital property to be assigned to that spouse.

*Brandenburg v. Brandenburg, supra* note 2 at 873 (emphasis added).

We, however, hold that the trial court properly considered Appellee's "sweat equity" as a marital contribution despite the holding in *Brandenburg*. "Equity" is the difference between the value of the property, or its sales price, and the mortgage against it. *See* BLACK'S LAW DICTIONARY 560 (7th Ed.1999). While monetary investments can increase the value of real property, clearly non-monetary contributions can do the same. If property's value increases as a result of one's labor and the mortgage against the property remains the same, it naturally follows that the equity in the property has increased. If, as was the case here, a party to a marriage increases the value of the property by his or her labors, then the increase in the value of the property resulting from this effort is acquired during the marriage and, thus, marital property, regardless of whether the property itself is otherwise characterized as one spouse's nonmarital property. Accordingly, we agree with the trial court's determination that Appellee's efforts increased the parties' marital interest in the residence.

the property. The trial court made no separate finding of fact that any of the overall appreciation in value resulted from Appellant's nonmarital contribution or general economic circumstances, but after applying the *Brandenburg* formula, assigned eighty-eight percent (88%) of the remaining insurance proceeds to Appellant. The trial court's findings and conclusions, however, implicitly rest upon the inference that nearly all of the house's increase in value resulted from general economic conditions instead of the joint efforts of the parties. We agree with the Court of Appeals that Appellant introduced no evidence to support such an inference, and we therefore find that the trial court erred when it utilized the *Brandenburg* formula and assigned a portion of this increase to Appellant as nonmarital property.

Appellant's direct examination testimony established only the amount of money the parties invested in the house and the amount of the insurance proceeds received when the house was destroyed:

Counsel: In addition to the $39,000.00 you just testified to, is it correct that you also took $7500.00 of which has been stipulated to?

Jeff Travis: That's correct.

Counsel: So the total amount of money you put into the house was approximately $47,—48,000.00, is that correct?

Jeff Travis: That is correct.

Counsel: You had the house insured for $63,000.00. Is that true?

Jeff Travis: That is true.

. . .

Counsel: So, the house you constructed for approximately $47,000.00, I'm rounding that off, you then received $63,000.00 in proceeds from the insurance, that correct?

Jeff Travis: Yeah.

Counsel: Now, after the Fredonia Bank Payoff was made, is it correct that there was $23,364.14 left?

Jeff Travis: Yes.

Although Appellant claims that KRE 403.190(2)(e) placed the burden of proof upon Appellee to prove whether any increase resulted from the joint efforts of the parties, we find this allegation without merit because KRE 403.190(3) explicitly allocates the burden of proof to the party claiming property as nonmarital:

> (3) *All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property*, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. *The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.*[18]

Appellant introduced no evidence from which the trial court could determine why the property increased in value. The KRS 304.190(3) presumption placed the burden on Appellant to show an increase in value as a result of general economic circumstances. Although the Appellant could have rebutted the presumption with "evidence which, in the mind of the fact finder, would cause a reasonable person

---

**18.** KRE 403.190(3) (emphasis added). *See also Marcum v. Marcum*, Ky., 779 S.W.2d 209, 210 (1989); *Brosick v. Brosick*, Ky.App., 974 S.W.2d 498, 502 (1998); *Underwood v.* *Underwood*, Ky.App., 836 S.W.2d 439, 441 (1992); *Culver v. Culver*, Ky.App., 572 S.W.2d 617, 620 (1978); *Adams v. Adams*, Ky.App., 565 S.W.2d 169, 170–171 (1978).

to justifiably disregard the presumption that the property in question is marital property,"[19] we agree with the Court of Appeals that Appellant failed to do so. Appellant only introduced evidence that the parties invested approximately $47,000.00 (including Appellant's $7,500.00 nonmarital contribution) in the house and that they received $63,000.00 in insurance proceeds after the fire. This evidence was not probative as to the relevant inquiry, and the evidence at trial suggests that this alleged "appreciation" might represent little more than a good bargain on the purchase of the home or an increase in value resulting from the parties' efforts in remodeling the residence.

The trial court merely assumed that some of the parties' windfall resulted from Appellant's nonmarital contribution and attempted to use the *Brandenburg* formula to determine the proportion of the proceeds attributable to that contribution. However, the initial assumption that some of the increase in value is nonmarital property is inconsistent with the KRS 304.190(3) presumption that all property acquired during the marriage (including appreciation in assets' value) is marital property. Because Appellant introduced no evidence to rebut the presumption, the trial court erred when it characterized any of the disputed proceeds as nonmarital property. We thus agree with the Court of Appeals's decision to reverse the trial court's judgment and remand the matter to the trial court to distribute the disputed amount as marital property under KRS 304.190(1).

## IV.  CONCLUSION

For the above reasons, we affirm the decision of the Court of Appeals.

19.  *Underwood v. Underwood, supra* note 18 at      441 n. 1.

LAMBERT, C.J., GRAVES, KELLER, STUMBO and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion with JOHNSTONE, J., joining that dissent.

COOPER, Justice, dissenting.

The majority opinion's analysis is erroneous in two respects: (1) its conclusion that the presumption of marital property set forth in KRS 403.190(3) applies to an increase in value of nonmarital property; and (2) its conclusion that there was insufficient evidence to support the trial judge's finding that the increase in value of the parties' marital residence was at least partly due to passive appreciation, *i.e.*, inflation, as opposed to marital contributions. A more fundamental error is the majority opinion's complete disregard of evidence of a substantial marital contribution to the ultimate equity value of the property in question, *viz:* the payoff of the mortgage with marital funds.

### I.

Our present dissolution of marriage act was enacted by the 1972 General Assembly. 1972 Ky. Acts, ch. 182. Section 9 of the act pertaining to disposition of property, now compiled at KRS 403.190, was adopted almost verbatim from the 1970 version of section 307 of the Uniform Marriage and Divorce Act promulgated by the National Conference of Commissioners on Uniform State Laws. *See* 9A *Uniform Laws Annotated,* Uniform Marriage and Divorce Act, § 307, Comment, at 240 ("Amendments") (West 1987). (In 1973, those portions of the Uniform Act relating to classification of property as marital or individual (nonmarital) were deleted. Those issues are now addressed in Section 4 of the Uniform Marital Property Act. *Id.,*

Uniform Marital Property Act, § 4, at 109–10.) The only two subsections of KRS 403.190 relevant to the present inquiry are subsections (2)(e) and (3). Since subsection (2) creates exceptions to the marital presumption established in subsection (3), the subsections will be considered in reverse order. KRS 403.190(3) provides:

All property acquired by either spouse *after the marriage* and before a decree of legal separation *is presumed to be marital property,* regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. *The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.*

(Emphasis added.) Except for a numbering variation, KRS 403.190(3) is a verbatim adoption of section 307(c) of the 1970 version of the Uniform Marriage and Divorce Act, *supra.* Of course, the converse of the first premise of subsection (3) is that property acquired by either spouse *before* the marriage or after a decree of legal separation is not marital property. *Sousley v. Sousley,* Ky., 614 S.W.2d 942 (1981); *Robinson v. Robinson,* Ky.App., 569 S.W.2d 178 (1978). Thus, the last sentence of the subsection applies only to property acquired after the marriage and before a decree of legal separation and specifically provides that the marital presumption with respect to such property is overcome "by a showing" that the property was acquired by one of the methods listed in subsection (2). In this case, the after-acquired property in question was the increase in value of the parties' residence from the date of purchase in August 1987 until its destruction by fire in August 1994.

KRS 403.190(2) provides, *inter alia:*

For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

. . .

(e) The increase in value of property acquired before the marriage *to the extent that such increase did not result from the efforts of the parties during marriage.*

(Emphasis added.) The emphasized language was not contained in section 307(b)(5) of the 1970 version of the Uniform Marriage and Divorce Act. Professor Louise Graham posits that the added language was engrafted onto KRS 403.190(2)(e) from pre-existing Kentucky case law, *e.g., Colley v. Colley,* Ky., 460 S.W.2d 821, 826–27 (1970). Louise E. Graham, *Using Formulas to Separate Marital and Nonmarital Property: A Policy Oriented Approach to the Division of Appreciated Property Upon Divorce,* 73 Ky. L.J. 41, 54n. 68 (1984–85). The parallel exception in section 307(b)(5) of the 1970 version of the Uniform Act was only for "the increase in value of property acquired before the marriage." Thus, section 307(b)(5) did not provide for the creation of a marital interest in nonmarital property by "team efforts," or what the majority opinion in this case refers to as "sweat equity," but required the same result as had our interpretation of our former restoration-of-property statute, KRS 403.060 (repealed 1972 Ky. Acts, ch. 182, § 29). *See generally Sandusky v. Sandusky,* 166 Ky. 472, 179 S.W. 415 (1915) (absent an agreement between the parties, a spouse is not entitled to reimbursement for expenditures made during the marriage to improve the other spouse's separate (nonmarital) property). Section 4(b) of the Uniform Marital Property Act also contains a presumption of marital property; and section 4(g)(3) now provides an exception for property ac-

quired "from appreciation of the spouse's individual property except to the extent that the appreciation is classified as marital property under Section 14 ['Mixed Property']." Thus, the relationship between sections 4(b) and 4(g)(3) of the Uniform Marital Property Act parallels the relationship between subsections (3) and (2)(e) of KRS 403.190. The official Comment to section 4(g)(3) of the Uniform Marital Property Act explains:

> Assume that one spouse comes to a marriage subject to the Act as the owner of a valuable piece of real estate. It is individual property. If it quadruples in value, it is *still* individual property. While its income is marital property, the property itself *and* its appreciation in value is almost always individual property. One exception is the special rule announced in Section 14(b). That rule is concerned with the application to the individual property of one spouse of personal effort by the other spouse. It could apply in limited situations, but establishing it requires a very strong showing. (Emphasis in original.)

Thus, while the National Conference of Commissioners on Uniform State Laws subsequently adopted an exception similar to KRS 403.190(2)(e), the Commissioners recognized that the burden should be on the proponent of the marital interest to make "a very strong showing" that an increase in value of one spouse's individual (nonmarital) property was attributable to marital efforts.

I agree with the majority opinion that the initial burden is on the proponent of the nonmarital interest to prove that property acquired during the marriage falls within one of the exceptions in KRS 403.190(2). However, I also agree with the Commissioners on Uniform State Laws that once it is established that a property interest acquired during the marriage is but an increase in value of a nonmarital asset or interest, the burden shifts to the proponent of the marital interest to show that any portion of the increase was due to a marital contribution. As Professor Petrilli notes in his treatise, KRS 403.190(2)(e) "contains an exception to an exception." Ralph S. Petrilli, *Kentucky Family Law*, § 24.9, at 301 (2d ed. Anderson 1988). I agree and would hold that evidence that a property interest acquired during the marriage is but an increase in value of a nonmarital asset or interest rebuts the marital presumption and the presumption, thus, disappears. Commentary to KRE 301, Evidence Rules Study Committee, Final Draft (1989); *cf. Magic Coal Co. v. Fox*, Ky., 19 S.W.3d 88, 95–96 (2000). Absent any other proof, the increase in value follows the nonmarital interest, but evidence that all or any part of the increase is due to marital contributions creates an exception to the exception necessitating apportionment of the marital and nonmarital interests. *Newman v. Newman*, Ky., 597 S.W.2d 137, 139 (1980).

The proponent of the nonmarital interest should not have the burden to prove that the increase was due to "inherent causes," Graham, *supra*, at 57, *i.e.*, passive appreciation due to inflation, by disproving every other possible influence on the value of the asset. Nevertheless, the insurance payoff in this case was $63,000.00; and simple mathematics shows that, at an inflation rate of five percent per annum (a conservative estimate for the period 1987–1994), a house purchased in August 1987 for $46,868.90 would increase in value to $65,949.26 by August 1994, *viz:*

$ 46,868.90 -1987
X      1.05

$ 49,212.35 -1988
X      1.05

$ 51,672.97 -1989
X      1.05

$ 54,256.62-1990
X___ 1.05
$ 56,969.45-1991
X___ 1.05
$ 59,817.92-1992
X___ 1.05
$ 62,808.82-1993
X___ 1.05
$ 65,949.26-1994.

In *Newman v. Newman, supra,* we specifically rejected the result reached by the Court of Appeals and the majority opinion in this case, *i.e.,* simply reimbursing the owner of the nonmarital interest for his nonmarital contribution and dividing the increase in value as marital property.

Polly argued that the proper disposition of the property would have been to reimburse William for the full amount of his contribution ($55,000) and the difference, which would be marital property, be divided as other marital property (60%–40%). . . . The trial court did not concur in that formula. The Court of Appeals did not concur in that formula, and neither does this court. We do concur in the formula used by the trial court in arriving at the monetary value of the interest (sic) of the parties.

*Id.* at 139. The trial court's formula approved in *Newman* was similar to that more fully defined in *Brandenburg v. Brandenburg,* Ky.App., 617 S.W.2d 871 (1981) and utilized by the trial court in this case.

## II.

Even if Appellant were required to disprove the existence of marital improvements to the value of the parties' residence, the majority opinion's conclusion that he failed to do so is belied by the record. It was uncontested that the residence was purchased with a $7,500.00 down payment and a mortgage loan of $39,368.90, and that the $7,500.00 down payment was traced to the sale of an antique automobile owned by Appellant prior to the marriage. During the course of his proof, Appellant called Appellee as a witness as if on cross-examination, CR 43.06, in an attempt to elicit information with respect to any claimed marital contributions to the value of the residence:

Q. Jeff has testified that the total amount of money you put into the house was this money that was borrowed [and] this $7,500, which is roughly $47,000, would you agree to that statement?

A. Yes.

Q. . . . [W]ere there any other things you did to the house after you had it constructed with this mortgage money and $7,500?

A. What do you mean?

Q. Did you do any other improvements later after you borrowed this money with the $7,500?

A. Yes, we, I did all the wallpapering, painting and staining.

Q. Let me ask you this question, as far as wallpapering, staining and painting, did you say you and Jeff did that?

A. I did most of that.

Q. Was the money borrowed, used to buy the paint, the stain and the wallpaper of the borrowed money and the $7,500?

A. I made some crafts and things and used some of that money and as soon as we got the money, a little at a time.

Q. Let me ask you this question. Do you have an opinion as to how much the paint, stain, and wallpaper you put in there?

A. No.

Q. Let me ask you, I'm not trying to put you on the spot, I'm trying to

get an idea, would it be more than $500 or less? As far as the cost of them?

A. I don't really know.

Q. Do you think it's more than $500?

A. (Inaudible.)

Q. Can you give a closer estimate or not, if you can't, that's all right.

A. (Inaudible.)

Q. Do you have an opinion to give the court as to what the staining, the painting and the wallpaper, how much it would increase the value of the house?

A. Quite a bit, I mean that's what made it was the inside. I mean the decorating of the inside.

Q. Do you have an opinion as to how much that increased the value, in other words, when the money was borrowed and the house was built the $47,000 roughly, do you have an opinion as to what the value of the painting, the wallpapering and the staining, if you have one? If you don't, I understand that.

A. I don't know.

During the presentation of her proof, Appellee testified as follows:

Q. Now you testified to the painting, staining and things like that?

A. Yes.

Q. Did you do anything else?

A. Yes, I made curtains ... (inaudible).

Such was the sum and substance of the evidence with respect to any marital improvements contributing to the increase in value of the residence. I am unable to discern what other evidence the majority of this Court would have Appellant produce to disprove any marital contributions to the increase in value of this residence. Should he have hired an expert to testify that since the increase in value was *not* due to any marital contributions, it was probably due to inflation?

The reason Appellant's attorney persisted in questioning Appellee about the monetary value of her claimed marital contributions is that nonmonetary contributions have, from *Brandenburg* until today, been disregarded in apportioning marital and nonmarital interests in transmuted property. *Brandenburg v. Brandenburg, supra,* at 873, *overruling Robinson v. Robinson, supra.* This is consistent with the view of the Commissioners on Uniform State Laws, as expressed in the official Comment to section 4(g)(3) of the Uniform Marital Property Act, *supra,* that the proponent of the marital interest must establish that interest by "a very strong showing." Under *Brandenburg,* that burden is met by proof of an expenditure of marital funds, but not by evidence of "sweat equity." *Id.* at 873. Apportionment in Kentucky has traditionally followed what Professor Graham characterizes as the "source of funds" rule. Graham, *supra,* at 47. By recognizing "sweat equity" as a marital contribution, the majority has overruled *Brandenburg, sub silentio,* and, in doing so, has eviscerated any hope for consistency in property divisions in divorce cases by vesting trial courts with virtually unfettered discretion to "find" amorphous "sweat equity" contributions to apportion into nonmarital assets and thereby reduce the value of nonmarital estates. This case is a perfect example. The *Brandenburg* requirement that marital or nonmarital contributions be monetary in nature before considered for apportionment purposes was first ignored by the trial judge, who found a $1,000.00 marital contribution based on Appellee's "sweat equity" testimony. Worse, both the Court of Appeals and now this Court have effectively found a $15,864.14 marital contribution based on that same testimony. Under *Branden-*

*burg,* Appellee's nonmonetary contributions to the value of the residence should not have been considered. However, since Appellant did not cross-appeal from the trial court's apportionment, I would, at worst, affirm the trial court's finding of a $1,000.00 marital contribution.

### III.

What the majority opinion completely overlooks is that the payoff of the mortgage indebtedness was, itself, a marital contribution to the equity value of this residence. This is not a case, as in *Newman* or *Brandenburg,* where we are required to determine the marital and nonmarital interests in an existing asset that is encumbered by a mortgage indebtedness. This residence was purchased partially with Appellant's $7,500 nonmarital money and partially with a $39,368.90 mortgage loan that was paid off during the marriage with marital funds.

Under *Brandenburg,* any reduction of the mortgage principal by application of other than nonmarital funds is a marital contribution. Actually, *Brandenburg* first said that the marital contribution included "the *amount expended* after the marriage from other than nonmarital funds in the reduction of mortgage principal" (and/or capital improvements). *Brandenburg, supra,* at 872 (emphasis added). However, the apportionment formula actually promulgated in that case treated the marital contribution as the amount by which the mortgage principal was reduced during the marriage, not the *amount expended* to accomplish that reduction. By emphasizing the creation of equity instead of funds expended to create equity, the *Brandenburg* formula usually leverages the nonmarital interest to the detriment of the marital interest because, in a normal mortgage contract, payments made during the early life of the mortgage (and, usually, the early life of the marriage) are assigned primarily to interest and very little to principal. John W. Potter and Ellen B. Ewing, *Apportioning Marital and Non–Marital Interests in a Single Asset,* Ky. Bench & Bar, Vol. 9, No. 2, at 14, 15 (1983). Thus, in a marriage of short duration, as much as 90% of mortgage payments made during the marriage may have been assigned to interest and as little as 10% to principal, *i.e.,* creation of equity; yet, payments assigned to interest are not considered marital contributions under *Brandenburg.* Of course, the *Brandenburg* approach to mortgage reduction cannot be fairly applied in this case because, although some mortgage payments may have been made, the balance owed on the mortgage in August 1994 was actually greater than the original mortgage loan in August 1987.

As suggested by Professor Graham, and as promised but not delivered in *Brandenburg,* a true "source of funds" approach to apportionment would credit the marital interest with amounts expended from other than nonmarital funds in the nature of (1) mortgage payments, whether applied to principal or interest, (2) taxes and insurance payments, and (3) expenditures for capital improvements. *Cf.* Graham, *supra,* at 69–73. This "investment" approach to the *Brandenburg* formula was advocated by the author of this opinion at domestic relations seminars at the University of Kentucky in April 1985, the University of Louisville in October 1985, and the annual meeting of the Kentucky Bar Association in June 1988. Unfortunately, like the *Brandenburg* approach, the "investment" approach cannot be applied in this case because neither party presented any evidence of amounts actually expended in the way of monthly mortgage payments, taxes and insurance, or capital improvements.

Nevertheless, we do know that the remaining balance of the mortgage on this residence was paid in full during the marriage with the proceeds of an insurance policy purchased during the marriage. If the mortgage had been paid off by, *e.g.,* monthly mortgage payments over the duration of the mortgage, the marital contribution under *Brandenburg* would have been $39,368.90. Under the investment approach, the marital contribution would have been all payments made on the mortgage loan, whether applied to principal or interest. The result should be no different here, except that the final payoff was $39,635.86. Thus, including the unauthorized, but uncontested, application of Appellee's $1,000.00 "sweat equity" contribution, the marital interest (MI) and the nonmarital interest (NMI) in this property can be calculated as follows:

A.  $ 1,000.00 ("sweat equity")
  + 39,635.86 (mortgage payoff)
  $ 40,635.86 = Marital contribution (MC)
  + 7,500.00 = Nonmarital contribution (NMC)
  $ 48,135.86 = Total contribution (TC).

B.  $ 63,000.00 = Equity (E).

C.  $ 40,635.86 (MC) = 84.42% X $63,000.00 (E) = $53,184.60 (MI).
  $ 48,135.86 (TC)

D.  $ 7,500.00 (NMC) = 15.58% X $63,000.00 (E) = $9,815.40 (NMI).
  $ 48,135.86 (TC)

Since the $39,635.86 mortgage payoff is treated as a marital contribution, the payoff must be credited against the marital interest. The marital interest thus becomes:

E.  $53,184.60
  -39,635.86
  $13,548.74.

The trial judge concluded under the facts of this case that a division of marital property "in just proportions," KRS 403.190(1), would be an equal division. Accordingly, Appellee should have been awarded $6,774.37 and Appellant $16,589.77 as their respective shares of the remaining insurance proceeds:

F.  2/$13.548.74 (MI)

  $ 6,774.37 (Appellee's share)
  + 9,815.40 (NMI)

  $16,589.77 (Appellant's share).

*Brandenburg* contains a specific disclaimer that apportionment formulas other than the one defined in that case may be "utilized ... in arriving at an equitable division of property as long as the relationship between the contributions of the parties is established." *Id.* at 873. Often, as here, the formula to be used will be dictated by the evidence offered by the parties. The apportionment formula used in this opinion virtually mirrors the formula described by Judges Potter and Ewing in their 1983 article, *supra,* and is the only formula capable of being fairly applied to the facts proven in this case.

For the foregoing reasons, I respectfully dissent.

JOHNSTONE, J., joins this dissenting opinion.