RENDERED: JANUARY 7, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2021-CA-0319-MR

MICHELLE WALCOTT COFFEY          APPELLANT

                APPEAL FROM WAYNE CIRCUIT COURT
v.     HONORABLE JENNIFER UPCHURCH EDWARDS, JUDGE
                ACTION NO. 19-CI-00020

BRADLEY DWIGHT COFFEY, JR.          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, DIXON, AND MAZE, JUDGES.

DIXON, JUDGE: Michelle Walcott Coffey appeals from the findings of fact, conclusions of law, and judgment following a decree of dissolution of marriage entered on May 1, 2020, and an order denying her motion to alter, amend, or vacate same entered on February 23, 2021, by the Wayne Circuit Court. Following careful review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Michelle Walcott Coffey and Bradley Dwight Coffey, Jr., were married on May 17, 2014. Shortly after the marriage, Bradley withdrew $49,500 from his retirement account, which he deposited into his checking account. He used more than the $49,500 from that checking account to: (1) purchase land on which to build a house for the couple, (2) purchase household furnishings, and (3) apply toward construction of the house. On July 16, 2014, the couple purchased seven acres of land from Bradley's family on which they built their house and tended cattle. The couple obtained a real estate mortgage for $140,000 to finance the home. They also purchased cattle,[1] a hay tedder, a cattle handling facility, a creep feeder, a grain bin, a disc mower, and a 2014 Dodge Ram truck.

On or about January 22, 2019, less than five years into their marriage, the couple separated. On January 25, 2019, Michelle petitioned the court for dissolution of the parties' marriage. After the parties exchanged discovery and attended an unsuccessful mediation, a final hearing was held on December 18, 2019, at which the parties testified as to their valuations of marital and nonmarital property. The trial court entered its findings of fact, conclusions of law, and judgment on May 1, 2020, classifying the parties' marital and nonmarital property

---

[1] Bradley had cattle prior to the marriage; however, neither party knew exactly how many.

and dividing it between the parties. Michelle moved the court to alter, amend, or vacate its order, but her motion was denied. This appeal followed.

## STANDARD OF REVIEW

On review, "we defer to the trial court's factual findings, upsetting them only if clearly erroneous or if unsupported by substantial evidence, but we review without deference the trial court's identification and application of legal principles." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340 (Ky. App. 2001). "Substantial evidence has been conclusively defined by Kentucky courts as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat. Res. & Env't. Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994).

## ANALYSIS

On appeal, Michelle first argues the court erred in its valuation of nonmarital funds contributed by Bradley to the construction of the marital residence, asserting that Bradley contributed only $22,000 in nonmarital funds toward the home.

It is well-established that when an item of property consists of both nonmarital and marital components, the trial court "must determine the parties' separate nonmarital and marital shares or interests in the property on the basis of the evidence before the court." *Travis v. Travis*, 59 S.W.3d 904, 909 (Ky. 2001).

Further, "Kentucky courts have typically applied the 'source of funds' rule to characterize property or to determine parties' nonmarital and marital interests in such property." *Id.* (footnote omitted).

At the final hearing, Bradley testified that he withdrew $49,500 from his retirement account and deposited the funds into his checking account. He further testified that he later used funds from his checking account to pay for land, household items, and construction expenses for the parties' marital residence. This was supported by bank statements showing the deposit and copies of the checks demonstrating funds were used for said expenses. Two of these checks were written specifically and solely for payments toward the home in the amounts of $35,200 and $25,000. Thus, we cannot say the trial court clearly erred or abused its discretion in tracing $49,500 of Bradley's nonmarital funds and assigning same as his nonmarital interest in the house.

Michelle further maintains the trial court erred in determining the value of the marital residence. Bradley produced a receipt for payment of the 2019 property tax bill in which the assessed value of the real estate was listed as $130,000. Bradley also produced a copy of the 2019 assessment from the Property Valuation Administrator which valued the residence at $130,000. Bradley testified that he believed that was a fair and accurate reflection of the value of the property given its remote location. Michelle, however, claims the property is worth

$170,000 because the parties borrowed $140,000 for its construction and paid $5,784 for the land, and she contends Bradley contributed $22,000 toward construction of the residence.[2]

The trial court determined Bradley's valuation was too low and the valuation proffered by Michelle was too high. Accordingly, the court assigned the value of the property at the amount of the original mortgage because there was no evidence of any significant appreciation or depreciation since that time. Contrary to Michelle's assertions, we cannot say the court's determination and valuation of the residence was arbitrary as it was supported by substantial evidence, namely the mortgage.

Michelle also contends the court erred in determining the number of cattle considered marital property. She claims all cattle should have been deemed marital property because the parties' testimony on the issue at the hearing was vague. However, based on the testimony, as well as the records presented to the court regarding purchase of cattle during the marriage, the trial court found that 21 cattle and one bull were marital property. Even so, the court ordered all cattle and the bull sold and the proceeds applied to the parties' indebtedness. After reviewing the record, we fail to find clear error or abuse of the court's discretion on this issue

---

[2] The sum of these figures totals $167,784; thus, it is clear Michelle rounded up to arrive at her valuation of the residence.

because its determination of the number of cattle deemed to be marital property was supported by substantial evidence, and its order that all cattle and the bull be sold to pay the parties' debt was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *See Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Michelle's final argument is the trial court abused its discretion in its division of marital property. "[A] trial court has wide discretion in dividing marital property; and we may not disturb the trial court's rulings on property-division issues unless the trial court has abused its discretion." *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006), *as modified* (Feb. 10, 2006). KRS[3] 403.190 governs the division of property in dissolution of marriage actions. Michelle acknowledges that the trial court was simply required to divide the parties' property in just proportions, considering the factors enumerated by statute, and not necessarily in equal proportions.

The trial court followed KRS 403.190(4) concerning the parties' retirement accounts. In pertinent part, that subsection provides that, "If the retirement benefits of one spouse are excepted from classification as marital property, or not considered as an economic circumstance during the division of

---

[3] Kentucky Revised Statutes.

marital property, then the retirement benefits of the other spouse shall also be excepted, or not considered, as the case may be."[4]

The trial court allowed the parties to retain the furniture each had in his or her possession, which appears to be fair and just under the circumstances. The trial court awarded Bradley the marital residence valued at $140,000, giving him credit for his $49,500 nonmarital interest in same, but also acknowledging the property was encumbered by a mortgage of approximately $98,428.59 at the time of the final hearing, and that any remaining debt associated therewith was to be fully assumed by Bradley. In addition, the trial court awarded Bradley the farm equipment, most of which was also encumbered by debts against it. The cattle and 2014 Dodge Ram truck were ordered to be sold to cover their indebtedness. The court did not require that Bradley reimburse Michelle for receipt of their 2018 income tax refund in the amount of $12,000 as he used those funds to pay marital indebtedness, nor was Michelle required to reimburse Bradley for his payment of

---

[4] Michelle made an unsupported statement in her brief that the trial court did not consider the great disparity between the retirement accounts of the parties and a listing of those accounts. However, she failed to make any argument as to the result or how the trial court had erred in this regard. We will not search the record to construct Michelle's argument for her, nor will we go on a fishing expedition to find support for her underdeveloped arguments. "Even when briefs have been filed, a reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979). Michelle concedes in her reply brief this alleged error is insufficient to merit reversal. Reply Brief at pg. 3.

-7-

her health and dental insurance premiums since the separation of $4,792 and $503, respectively.

Based on the foregoing division of property, it is unclear how the record could support Michelle's contention that the judgment of the trial court "is extremely unfair[.]" It appears that neither party is substantially better or worse off than prior to the marriage. The division of property was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *See English*, 993 S.W.2d at 945. Accordingly, and for the reasons previously discussed, we further disagree with Michelle's claim that "it is crystal clear that the trial court abused its discretion."

## CONCLUSION

Therefore, and for the foregoing reasons, the orders entered by the Wayne Circuit Court are AFFIRMED.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| James M. Frazer | Travis W. Bell |
| Monticello, Kentucky | Monticello, Kentucky |