RENDERED: SEPTEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-0632-MR
AND
NO. 2018-CA-0923-MR

SARA YOUNT PETTINGILL             APPELLANT

            APPEALS FROM JEFFERSON FAMILY COURT
v.             HONORABLE A. CHRISTINE WARD, JUDGE
            ACTION NO. 13-CI-502075

JEFFREY LUCIUS PETTINGILL             APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE: MAZE, TAYLOR, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: Sara Yount Pettingill appeals from two separate orders

of the Jefferson Family Court relating to the dissolution action between her and

Jeffrey Lucius Pettingill (Jeff). In No. 2018-CA-0632-MR, Sara appeals from the

family court's property distribution order amending the judgment entered on

February 26, 2018, as amended by the order entered on March 19, 2018. In No. 2018-CA-0923-MR, Sara appeals from the family court's May 30, 2018 order, denying her Kentucky Rules of Civil Procedure (CR) 60.02(f) motion to reopen the dissolution action to divide personal property. We affirm as to the division of the value of the home on remand, but reverse the denial of the CR 60.02(f) motion to reopen and reverse the award of post-judgment interest. We remand for a just division of the marital personal property and entry of a new judgment.

Jeff and Sara married in 2010 and began living in the home Sara owned which she was in the process of renovating with $50,000 she had inherited from her aunt. They had a child in 2012 and Sarah petitioned for dissolution in 2013. The current appeals are based upon actions the family court took regarding their property after initial appeals to our Court which were resolved in 2017. We only discuss the portions of the prior proceedings necessary for understanding the current appeals.

In the dissolution action, the parties stipulated that the home was Sara's nonmarital property, subject to a marital claim by Jeff as they paid down the mortgage during their marriage. They also stipulated to the value of the home as follows: November 2010 – $200,000; June 2013 – $215,000; January 7, 2014 – $263,000. There was also a stipulation as to the division of personal property which was later withdrawn.

The trial was held in 2014 and a limited decree of dissolution was entered, reserving other issues. During the trial both parties offered evidence regarding property division, which included the home, vehicles, Jeff's expended retirement funds, Sara's retirement account, and the division of personal property.[1]

In January 2015, the original trial judge retired. On February 19, 2015, a property division judgment was entered which was drafted by a new judge with the following awards of note: (1) Sara was awarded the home and credited with having a $44,000 nonmarital equity in the home and entitlement to the $15,000 increase in its value during the marriage due to her investment of $50,000 in nonmarital funds for its renovation based on the November 2010 and June 2013 stipulations of the home's value, resulting in $59,000 of its value being her nonmarital property with the remaining $22,157 of equity deemed marital; (2) proceeds of the couple's sale of a marital vehicle totaling $17,250 which were held in escrow by Sara's attorney were divided with $3,500 restored to Sara for her nonmarital contribution and $13,750 deemed marital; (4) Jeff was assigned the $13,750 of marital funds in the escrow account as a just division of both the car sale proceeds and the $22,157 of marital equity in the home, with Sara given a higher percentage as a just division as Jeff had higher earnings, Sara assumed

---

[1] There were other issues resolved that are not relevant to this appeal, including custody and child support.

responsibility for paying off an upside-down loan on the vehicle assigned to her and marital funds were used to pay the taxes on Jeff's nonmarital property lots; and (5) Sara and Jeff were each awarded one-half of Sara's marital retirement account but Jeff's portion was reduced by $17,605 which was half of the retirement accounts he cashed in during the marriage and spent on himself without Sara's knowledge for nonmarital items.[2] The issue of the distribution of personal property was not addressed.

Jeff subsequently moved for modification on several grounds including the valuation and division of the marital home and requested that the family court explain what proof it had that he dissipated funds from his retirement accounts.

On June 17, 2015, an order was entered in which the family court rejected Jeff's claims regarding the home, deeming the $215,000 valuation appropriate as joint contributions to pay the mortgage ceased with their separation and the parties agreed all home remodeling and renovation had been completed by that time. It explained its division was proper because a $15,000 increase in the home's value was attributable to Sara's investment of $50,000 in nonmarital funds to renovate the home. The family court stated it made no finding that Jeff

---

[2] For ease, we omit all references to cents in reciting monetary amounts and in doing so do not "round" to the nearest dollar.

dissipated marital funds and all his expended retirement funds were marital because he had not traced them.

Jeff filed a timely notice of appeal on June 29, 2015, but continued litigating before the family court. On July 6, 2015, he filed a motion for additional findings as to the division of personal property and the disbursement of the $13,750 held in the escrow account.

In an August 17, 2015 order, the family court acknowledged it had failed to address all existing issues, explaining that at trial both parties had offered itemized lists of marital and nonmarital personal property, but that no division of these items had been made, and it was appropriate to now clarify what was owed to Jeff from Sara's marital portion of her retirement account given her submission of evidence as to its value.

The family court recounted the evidence admitted at trial regarding the division of personal property, which was largely agreed to by the parties. Sara tendered two lists of personal property with a total marital property value of $51,501 and proposed that Jeff be awarded marital personal property that totaled $45,542. Sara enumerated a list of the marital items that she wished to retain totaling $5,959 and requested that she be credited with the difference in value. Sara testified she constructed these lists from a previous document created by Jeff and given to her, with the values from him.

Jeff did not dispute the valuation or how the property was to be divided between them but requested that the items be divided in such a way that neither party would owe the other party money. Of note, the family court stated that Jeff testified that all of the items were in Sara's possession.

While there was a dispute as to whether certain items to be awarded to Jeff were nonmarital, the family court found that Jeff offered no proof besides his own testimony and made a credibility finding against him. The family court chose to award the property as Sara had designated and Jeff agreed, and concluded that Jeff owed Sara $19,763 to equalize the distribution of this marital personal property.

The family court also concluded from Sara's supplemental proof regarding the marital portion of her retirement account that half of it, $13,919, was due Jeff, but reiterated that the amount due Jeff had to be reduced by $17,605 for his early withdrawal of retirement accounts. It ordered that Sara receive all funds held in escrow, with Jeff owing Sara an additional $9,729.

The family court ordered both parties to relinquish all items in their possession which were awarded to the other within ten days. Jeff was ordered to pay Sara the funds owed to her within ninety days.

As the items were all in Sara's possession, this had the effect that she was the only one relinquishing such items. She did so in accordance with the order and Jeff took possession of these items.

Jeff subsequently appealed from this order. The money in escrow was not released to Sara and Jeff did not pay Sara.

Jeff's consolidated appeal was considered by a panel of our Court in *Pettingill v. Pettingill*, No. 2015-CA-001000-MR and No. 2015-CA-001702-MR, 2017 WL 729782 (Ky.App. Feb. 24, 2017) (unpublished).[3] Jeff raised three grounds of error by the family court: (1) the August 17, 2015 order could not be enforced because the family court lacked jurisdiction to enter it (so Jeff could not be required to pay Sara an equalizing payment for the distribution of marital personal property to him); (2) the reduction of Jeff's share of Sara's marital retirement funds based on Jeff's spending of his marital retirement account was in error without a finding of dissipation; and (3) the marital home was incorrectly valued.

---

[3] This dissolution case was again before our Court in *Pettingill v. Pettingill*, No. 2017-CA-001092-ME, 2018 WL 2174092 (Ky.App. May 11, 2018) (unpublished) (affirming an order of contempt against Jeff for him willfully failing to pay child support and awarding Sara attorney fees). The parties have also been before the Kentucky Supreme Court and our Court in a domestic violence action. *Pettingill v. Pettingill*, 480 S.W.3d 920 (Ky. 2015) (affirming an unreported opinion from the Court of Appeals which affirmed entry of a domestic violence order (DVO) protecting Sara from Jeff); *Pettingill v. Pettingill*, No. 2016-CA-000589-ME, 2017 WL 651990 (Ky.App. Feb. 17, 2017) (unpublished) (dismissing an unpreserved constitutional challenge to renewal of the DVO order). We do not discuss these cases as they are not relevant to the current appeal.

In 2017, the Court of Appeals ruled that the August 17, 2015 order, which was entered after the family court lost jurisdiction due to the appeal, was "void *ab initio*" and "[a]s a result . . . has no effect." *Id.* at *4. It vacated this order. *Id.* at *7. It noted:

> Jeff is not faultless in this error. On July 6, 2015, having filed the notice of appeal in June, he moved the trial court to make additional findings regarding distribution of property and disbursement of funds held in an attorney's escrow account. Having discovered unresolved issues, Jeff should have withdrawn his appeal or asked us to hold it in abeyance pending resolution of his latest trial court motion. He did neither. Continuing to seek relief in the trial court on previously addressed issues being appealed to this Court invited the trial court to commit error for which he and the trial court must share responsibility.

*Id.* at *5.

Regarding Jeff's spent retirement funds, the Court of Appeals ruled that the family court committed "fundamental error" by reducing Jeff's share of Sara's retirement account by $17,605, "one-half of his already spent retirement account[,]" explaining that "absent a finding of dissipation, once a marital asset has been spent, destroyed, sold or given away, it is no longer a part of the marital estate and cannot be divided by the court." *Id.* at *5. It reversed, ordering the family court to restore these funds, explaining that not only was there no finding of dissipation, but that the evidence also would not have supported such a finding. *Id.* at *6.

-8-

As to the valuation of the marital home, the Court of Appeals explained the parties were bound by their June 7, 2014 stipulation as to value because the marital estate should be valued as of the date of the limited decree of dissolution entered on November 18, 2014. *Id.* at *6-7. It ruled that by ignoring this latest stipulation, the family court abused its discretion. *Id.* at *7.

Regarding the February 15, 2015 judgment, the Court summarized that it was "reversed and remanded for further proceedings wherein the court uses the appropriate value of the marital home and restores $17,605.89 to Jeff." *Id.*

On remand, Jeff requested a post appellate judgment be entered. He explained that based on the stipulated value of the home, once the equity in the house was reduced by Sara's nonmarital equity of $44,000 and the $15,000 increase in value due to the expenditure of nonmarital funds, there was a net marital equity of $70,157. Therefore, in originally awarding Sara 100% of the previously calculated $22,157 marital equity and Jeff $13,750 as an in-kind division, that the family court awarded 62% of the marital equity to Sara and 38% to Jeff. Jeff argued this percentage of division should not be applied going forward and instead the marital equity should be divided equally with each party receiving $41,907. He requested that he receive the escrowed award and receive a judgment against Sara for $45,809, plus interest calculated from February 19, 2015.

As to the home, Sara argued that pursuant to the *Brandenburg* formula that she should be credited with a nonmarital contribution of $99,000 based on her nonmarital investment of $55,000[4] and nonmarital equity of $44,000 at marriage. Sara argued that Jeff was entitled to half of the marital interest in the home, resulting in an interest of $18,629, half the marital portion of her retirement account which was $13,919 and half of the balance in the escrow account after deducting her nonmarital claim of $3,500 in that fund. She argued that if all of the escrowed funds were distributed to him, Jeff would be due a cash payment from her of $7,329.

As to the marital personal property, Sara argued she should be restored the vacated award of $19,793 as the award was not vacated because the ruling was erroneous, but because the family court lost jurisdiction. Given that Jeff had already removed the marital personal property assigned to him under the void order from the marital residence, Sara argued Jeff should have to pay to equalize this division.

---

[4] This included $5,000 in nonmarital funds she had used to pay down the mortgage after the marriage in refinancing. However, the family court calculated Sara's nonmarital equity in the home as of when she refinanced, so this $5,000 was already accounted for, because the $44,000 of equity was derived from the first stipulated value of the home, $200,000, minus the refinance amount of $156,000.

Sara also filed a separate motion for entry of an order awarding her a judgment against Jeff for $19,797 to offset the value of the personal property assigned to Jeff in the void order.

On February 26, 2018, an order amending the previous property division judgment was entered. The family court declined to recalculate the value added to the home by Sara's nonmarital investment in remodeling which it had originally calculated at $15,000, determined that her nonmarital equity was $59,000 and calculated the marital portion of the home's equity at $70,157. The family court added this amount to the $13,750 escrow account and then divided the marital property in half (subtracting the $13,750 it believed Jeff had already received from the escrow account) resulting in Jeff being owed $28,203. It then awarded Jeff half of Sara's retirement account, $17,605, bringing the total due Jeff to $45,809 and ordered that this judgment shall accrue interest at the statutory rate of 6% per annum from the date of the entry of the original order of February 19, 2015.

On March 2, 2018, the family court denied Sara's motion for the division of personal property. It stated "[h]aving considered the directives of the Court of Appeals, the Court concludes its jurisdiction to enter orders regarding distribution of property was not just temporarily divested by the appeal, it permanently ended 10 days after the entry of the February 19, 2015 order." The

family court concluded, "it is unable to grant the requested offsets and or redistributions as it lacks jurisdiction to reopen or reconsider any portions of its February 19, 2015 order except as strictly directed by the Court of Appeals."

Sarah filed a motion to alter, amend, or vacate and for additional findings of fact regarding the February 26, 2018 property division order. She challenged only receiving credit for $15,000 of her nonmarital contribution given the nonmarital money she expended in remodeling the home and the award of post-judgment interest dating to the 2015 judgment when the amount ordered had not existed then. She also clarified what had occurred relative to the $13,750 in escrow.

On March 19, 2018, the family court denied Sara's motion to the extent that she be granted additional credit for her nonmarital contribution to the home, stated it had no discretion to deny Jeff interest on the judgment from February 19, 2015. The family court amended the judgment to reflect that Jeff had not received distribution of the $13,750 held in the escrow account, determining this amount should be added to the total amount due Jeff for a total judgment of $52,684.

Sara appealed on the issues of the division of the increased value of the home and the award of post-judgment interest. She did not appeal as to the denial of her request to divide the marital personal property.

Instead, on April 16, 2018, Sara filed a CR 60.02(f) motion asking the family court to reopen the dissolution decree. Sara explained she originally requested a division of the marital personal property and she only allowed Jeff to claim the personal property in her possession worth $45,542 because of the court order entered in August 2015, ordered her to relinquish the personal property to him and awarded her an equalizing payment. She argued it would be a gross injustice to allow Jeff to retain this personal property without having to pay her for it and this provided an extraordinary ground for relief.

On May 30, 2018, an order was entered denying Sara's motion to reopen. The family court explained that upon conclusion of the parties' trial that no request was made to reserve further distribution of property, the February 19, 2015 order made no reference to any such reservation and no request to address the distribution of personal property was made until Jeff's motion filed July 6, 2015, requesting additional findings. Given this sequence of events, it determined "this Court no longer believes it has authority to disturb the previous judgment" after it became final. The family court noted that "although [it] agrees with [Sara] that the outcome may be unjust" it felt "bound to follow the law and procedural requirements imposed upon it, even when the Court may disagree with the fairness of the outcome" and Sara had failed to demonstrate an extraordinary basis to justify the relief requested.

-13-

Sara appealed the denial of her CR 60.02(f) motion on the basis that the family court abused its discretion in failing to grant her relief so that she could receive credit for the personal property she turned over to Jeff. Sara's two appeals were consolidated for our review.

There is no dispute about Sara's nonmarital contribution to the home. Therefore, the classification issue has already been addressed. The only question is how the nonmarital funds she spent on remodeling the home did or did not increase the home's value between the second and third stipulated valuations.

"If a piece of mixed-status property increases in value during the marriage, the court must then determine from the evidence why the increase in value occurred." *Cobane v. Cobane*, 544 S.W.3d 672, 682 (Ky.App. 2018). However, "it is very difficult to trace expenditures for specific improvements into the overall value of the property." *Maclean v. Middleton*, 419 S.W.3d 755, 771 (Ky.App. 2014).

Kentucky Revised Statutes (KRS) 403.190(3) provides that "[a]ll property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property" but "[t]he presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section." KRS 403.190(2)(e) provides that "[t]he increase in value of property acquired before the marriage to the extent that such

-14-

increase did not result from the efforts of the parties during marriage" is an exception to this presumption.

KRS 403.190(3) creates a presumption that any increase in value of property that has both a marital and nonmarital component is marital property; "therefore, a party asserting that he or she should receive appreciation upon a nonmarital contribution as his or her nonmarital property carries the burden of proving the portion of the increase in value attributable to the nonmarital contribution." *Travis v. Travis*, 59 S.W.3d 904, 910 (Ky. 2001) (footnote omitted). This burden must be satisfied by clear and convincing evidence. *Croft v. Croft*, 240 S.W.3d 651, 653 (Ky.App. 2007). Pursuant to the KRS 403.190(3) presumption, the failure to satisfy this burden will result in the increase properly being characterized as marital property. *Travis*, 59 S.W.3d at 911.

While Sara's nonmarital contribution for remodeling the home is undisputed, she failed in her burden to prove by clear and convincing evidence that the increased valuation of the house between the second and third stipulations was due to the money she spent in remodeling it, as this remodeling was completed prior to the second stipulation. While, certainly, when investing money in home improvements we would all wish that the money invested would later be reflected in an increase in overall value, this is not always the case and Sara is bound by the stipulations as to value. Therefore, the family court reasonably found that the

-15-

increase in value between the second and third stipulations was marital as the evidence supported a finding that the increase was due to market forces, the presumption was the increase was marital and Sara failed to overcome this presumption.

Sara argues the family court erred by failing to grant her motion for CR 60.02(f) relief while Jeff argues she should have filed a direct appeal and has failed to meet the requirements for CR 60.02(f) relief. We agree with Sara that she is entitled to relief.

CR 60.02 provides in relevant part as follows: "On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: . . . (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time[.]" We review the denial of this motion for abuse of discretion. *Foley v. Commonwealth*, 425 S.W.3d 880, 886 (Ky. 2014).

As explained in *Fry v. Kersey*, 833 S.W.2d 392, 393 (Ky.App. 1992), "a decree of dissolution does not preclude a party from taking action to recover unassigned property in which he or she had an interest at the time of the decree, and . . . CR 60.02 may be a proper vehicle for reopening the decree[.]" Therefore, whether a decree may be reopened depends on whether the particular facts of each case qualify for such relief. *Fry*, 833 S.W.2d at 393.

-16-

In pertinent part, KRS 403.250(1) provides that "[t]he provisions [of a dissolution decree] as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." The law of this state relating to the reopening of decrees is found in CR 60.02. Under the residual clause of that rule, a judgment may be set aside for "reason[s] of an extraordinary nature justifying relief." CR 60.02(f). Kentucky's highest court has warned, however, that "because of the desirability of according finality to judgments, this clause must be invoked only with extreme caution, and only under most unusual circumstances." *Cawood v. Cawood,* Ky., 329 S.W.2d 569, 571 (1959). To the same effect is *Bishir v. Bishir,* Ky., 698 S.W.2d 823, 826 (1985).

*Id.* at 393-94. *See Copas v. Copas*, 359 S.W.3d 471, 475-77 (Ky.App. 2012)

(discussing relevant standards and affirming reopening of a property distribution

judgment under CR 60.02(f) so that the court's original intent in awarding marital

military retirement pay could be carried out).

The family court interpreted the panel's previous opinion too strictly

in denying relief to Sara despite acknowledging that allowing Jeff to keep the

personal property without compensating Sara was unfair to her. We do not believe

that Sara erred in failing to appeal from the family court's decision that it lacked

jurisdiction to divide the personal property and, instead, quickly filing a motion to

reopen the dissolution proceedings pursuant to CR 60.02(f). This was an

appropriate response to attempt to allow the family court to resume jurisdiction.

-17-

Having reviewed the facts, we have no difficulty concluding that the family court abused its discretion in failing to grant relief to Sara under CR 60.02(f) where: (1) Jeff invited the error by filing a motion for division of the personal property while the judgment was pending on appeal; (2) Jeff accepted delivery of marital personal property which was valued at $45,542 while Sara retained marital personal property valued at $5,959 pursuant to a court order before Jeff filed an appeal challenging the validity of this order so as to avoid his award being reduced due to an equalizing payment; (3) Jeff failed to return the marital personal property once the order was deemed void; (4) on remand, Jeff, having previously used the court system to obtain possession of the bulk of the marital personal property that was in Sara's possession, argued that she was not entitled to any compensation for it because the underlying order was void; and (5) Jeff further argued Sara could not receive compensation for the marital personal property now in his possession because she did not preserve the issue after the family court failed to divide the personal property in the original judgment (ignoring the fact that he did not preserve this issue either, but still sought and received relief and delivery of the property under the void order).

We will neither countenance the gamesmanship in which the court system has been used to benefit Jeff and thwart Sara, nor allow it to continue. Jeff cannot have his cake and eat it, too. He cannot retain what was deemed marital

personal property which had a substantial value for free. Justice requires that Sara be granted relief on this issue as Jeff's actions regarding this marital personal property constitutes unusual circumstances of an extraordinary nature.

Therefore, we reverse for the judgment to be set aside and remand for a just division of the parties' marital personal property. As the previous order dividing marital personal property is void, the family court will need to decide: (1) what personal property previously delivered into each party's possession (pursuant to the void order) is marital; (2) the valuation of the marital personal property as of the date of the original decree; and (3) then divide the marital personal property in just proportions. We would recommend that the family court not attempt to redistribute physical property which may no longer exist, but rather to appropriately equalize the distribution which already occurred. Although a new judgment must then be entered, the family court should not make any further alterations as to the previous award of marital property which was already reviewed or reviewable by us in the current appeals.

Finally, Sara argues that it is unjust that she was ordered to pay 6% post-judgment interest from the original 2015 judgment date, when the current judgment which requires her to pay Jeff more was not entered until 2018. We agree that post-judgment interest could not be ordered dating back to the 2015 judgment because that judgment never became a final judgment. Pursuant to the

2017 appellate opinion, the family court was required to enter a new judgment and did so in 2018, and that new judgment made different awards. Indeed, given our ruling as to the division of personal property, there is no final judgment now. Additionally problematic is the family court's belief that it lacked any discretion in the percentage of post-judgment interest awarded.

KRS 360.040(1) provides that "a judgment . . . shall bear six percent (6%) interest compounded annually from the date the judgment is entered" subject to certain exceptions. Among those exceptions is that "[w]hen a claim for unliquidated damages is reduced to judgment, such judgment *may* bear less interest than six percent (6%) if the court rendering such judgment, after a hearing on that question, is satisfied that the rate of interest should be less than six percent (6%)." KRS 360.040(4) (emphasis added).

"The plain language of KRS 360.040 is clear. A judgment *shall* bear interest. The trial court has discretion in the *amount of interest* awarded in two situations: (1) when the judgment is for an unliquidated amount (and if equity favors a lower amount) and (2) if the interest is provided for in a written obligation." *Doyle v. Doyle*, 549 S.W.3d 450, 455 (Ky. 2018).

When a court is tasked with dividing marital property (as opposed to the parties doing so pursuant to an agreement), the division of marital property is unliquidated as it is an award which results from a "trial court's classification and

*equitable* division . . . [which cannot be] predicted with any amount of certainty. It [becomes] liquidated when it [is] reduced to judgment; however, for purposes of KRS 360.040, the *claim* is controlling." *Id.* at 456. When determining post-judgment interest on "an unliquidated claim reduced to a liquidated judgment, the trial court *does* have discretion in the amount of interest to award, should a balance of the equities support a lower amount." *Id.* (emphasis added).

As the division of marital property was an unliquidated claim reduced to a liquidated judgment which was then altered after appeal and remand, resulting in a different liquidated judgment, the family court was incorrect that it was required to impose post-judgment interest at the full statutory rate of 6%. Reversal would be appropriate on that basis alone.

Certainly, also, it was unwarranted for the family court to award post-judgment interest in any amount dating back to the original judgment in 2015. As explained in *Lipson v. University of Louisville*, 556 S.W.3d 18, 35 (Ky.App. 2018), it is an abuse of discretion for post-judgment interest to be awarded prior to all the rights of the parties being adjudicated; instead, "postjudgment interest should begin to accrue from the date of the order awarding postjudgment interest." While an erroneous vacation or calculation of award would allow post-judgment interest to accrue from the entry of the judgment, this is only true "where an appellate court can mandate correction of the error without resort to additional proceedings."

*Commonwealth, Justice and Public Safety Cabinet, Department of Kentucky State Police v. Gaither*, 539 S.W.3d 667, 677 (Ky. 2018). If an appeal changes an original judgment, necessitating additional proceedings on remand, post-judgment interest properly runs not from the original judgment, but from a final judgment entered on remand. *See Sharp v. Sharp*, 516 S.W.2d 875, 879 (Ky. 1974).

The initial judgment dividing property in February 19, 2015, specified that Jeff was owed the $13,750 in escrow and half of the marital portion of the unspecified value of Sara's marital retirement account, to be reduced by $17,605. At this point, it was unclear how much Jeff was in fact owed. Additional proceedings would be necessary to clarify this matter, but it was just a matter of a calculation.

When Jeff appealed, he was seeking a correction in the amount deducted from what he would receive based on his "misconduct" which did not qualify as dissipation. Again, this was simply a matter of a correction through calculation, should the Court of Appeals agree with him, which it did. However, in reversing and remanding for further proceedings, noting which valuation needed to be used for the home and directing that Jeff be restored $17,605, the Court of Appeals did not specifically mandate entry of a new judgment based solely on those calculations. Nor could it, as the family court needed to determine whether the increased value to the home was marital or not.

Rather than just argue as to the increase in the home's value being marital, Jeff asked for a new judgment as to the percentage he should receive of the marital portion of the house. Whereas originally the division was slanted in Sara's favor, he sought a 50-50 division, which he was in fact given on remand. Accordingly, there was an entirely new judgment entered in 2018 and post-judgment interest would not be appropriate until entry of that judgment.

However, we also do not believe that post-judgment interest in any amount is appropriately awarded from the 2018 judgment. As we are reversing regarding the denial of CR 60.02(f) relief on the division of marital personal property and authorizing the family court to make a proper division of such (rather than ordering an amount certain to Sara), there is currently no final judgment. Once a final judgment is entered on remand, the family court shall order post-judgment interest from the date of entry of that judgment but must consider the equities in exercising its discretion to decide what interest rate is appropriate from entry of that judgment.

Accordingly, we affirm the Jefferson Family Court's division of the additional value of the home, reverse the denial of the CR 60.02(f) motion and remand for the reopening of the dissolution action for appropriate further proceedings assigning and dividing personal property and entry of a new judgment. We reverse the award of post-judgment interest from the original judgment date

and note the family court should exercise its discretion in determining what interest rate is appropriate in awarding post-judgment interest from the date a new judgment is entered.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Bryan Daniel Gatewood[5]
Louisville, Kentucky

BRIEF FOR APPELLEE:

William David Tingley
Ft. Mitchell, Kentucky

---

[5] Subsequent to briefing on this appeal, on April 8, 2021, via executive order 2021-242, Governor Andy Beshear appointed the Honorable Bryan Daniel Gatewood to the office of Circuit Judge for the 30th Judicial Circuit, Family Division 8.