RENDERED:  JUNE 12, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0286-MR

KEVIN CHRISTOPHER HIBDON                      APPELLANT

v.              APPEAL FROM BULLITT FAMILY COURT
HONORABLE MONICA K. MEREDITH, JUDGE
ACTION NO. 23-CI-00876

APRIL NICHOLE HIBDON                         APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND CETRULO, JUDGES.

CALDWELL, JUDGE:  Kevin Hibdon ("Kevin") challenges the Bullitt Family

Court's disposition of property in his divorce from April Hibdon ("April").  We

affirm in part, reverse in part, and remand for further proceedings.

# FACTS

Kevin and April were married in late 2019 and separated in late 2023. Shortly after their separation, April filed a petition for divorce. The parties did not obtain a decree of legal separation, and they had no children together.

The family court heard evidence on property disposition issues in November 2024. In early January 2025, the court issued the divorce decree along with supporting findings of fact and conclusions of law. The key issues in dispute concerned property disposition.

The family court concluded the marital residence was April's nonmarital property. The court found April bought the residence prior to the marriage, the title and mortgage were solely in April's name, and April made all house payments during the separation.

The court ordered that April must reimburse Kevin for over $11,000.00 of his nonmarital funds (according to Kevin and not disputed by April)[1] which were used to make April's mortgage current so that forfeiture was avoided. It also ordered that April must reimburse Kevin for about $1,800.00 for one-half of the cost of acquiring a shed and an above-ground swimming pool, both installed on

---

[1] The family court's findings indicated April did not dispute that the approximately $11,000.00 used to avoid foreclosure came from Kevin's nonmarital funds. However, April's counsel asserted in closing argument to the family court that Kevin failed to adequately prove how the $11,000.00 plus used to avoid foreclosure came from Kevin's nonmarital funds. Nonetheless, April has not filed a cross-appeal to challenge the family court's requiring her to reimburse Kevin for the $11,000.00 plus in funds used to avoid foreclosure.

the marital residence grounds during the marriage. Other than ordering these reimbursements, however, the family court did not award anything related to the marital residence to Kevin.[2]

The family court awarded all pets to April. It also took note that Kevin submitted a list of personal property items which he sought to have returned to him. It noted Kevin claimed these items were his nonmarital property and had been left at the marital residence. (Items on the list included clothes, artworks, a Playstation, and a snake mount.) The court found April testified to giving many of these items to a friend of Kevin's. It also found April admitted to having some of these personal property items in her possession—specifically the snake mount, Playstation, and four wheels or tires.

The court held Kevin was entitled to recover the personal property which he had left at the marital residence including the snake mount, Playstation, and wheels or tires. The court also ordered that April must return any other listed items in her possession, and the parties must arrange for Kevin to recover the items within 30 days of the divorce decree's entry.

---

[2] The family court also ordered that April must reimburse Kevin for $2,000.00—for half of the parties' refund for their jointly filed 2023 tax return. Neither party has alleged error in the family court's resolution of issues about the tax refund, pool and shed. Nor has either party challenged the family court's disposition of vehicles, furniture or appliances. And again, April has not filed a cross-appeal to challenge the family court's ordering her to reimburse Kevin for the approximately $11,000.00 spent to avoid foreclosure.

Kevin filed a motion to alter, amend, or vacate pursuant to CR[3] 59.05. He asked the family court to change its finding that the marital residence was April's nonmarital property, asserting marital funds were used to pay the mortgage. He also requested that the court amend the award of the pets to April. He asserted April had not denied the pets were marital assets subject to division.

The family court denied his CR 59.05 motion. Kevin filed a timely appeal. Further facts will be discussed as needed in our analysis.

## ANALYSIS

Kevin's appellant brief argument does not begin with an explicit preservation statement with specific citations to the record. *See* RAP[4] 32(A)(4).[5] Nonetheless, most of the issues raised on appeal were also raised to the family court via the motion to alter, amend, or vacate.

---

[3] Kentucky Rules of Civil Procedure.

[4] Kentucky Rules of Appellate Procedure.

[5] Kevin's appellant brief also fails to comply with other appellate briefing rules, such as requirements for an appellant brief appendix. *See, e.g.*, RAP 32(E)(1)(a). We are not aware of any prior history of failure to comply with appellate briefing rules on Kevin's appellate counsel's part, and we decline to impose sanctions here. However, we urge counsel to carefully review the Rules of Appellate Procedure before filing appellate briefs in the future.

Substantial failure to comply with appellate briefing rules can result in sanctions including striking briefs. *See* RAP 10(B); RAP 31(H)(1). Helpful resources, including appellate briefing checklists and a basic appellate handbook, are available on our Court's website, https://www.kycourts.gov/Courts/Court-of-Appeals (last accessed Mar. 6, 2026).

We will address preserved issues for review under otherwise applicable standards of review later in this Opinion. But first we set forth why we decline to address an issue which Kevin failed to show was preserved for appeal.

**We Decline to Address Kevin's Appellate Argument for Reimbursement for Unreturned Personal Property Items Since He Did Not Show How This Issue Was Preserved for Review and He Did Not Request Palpable Error Review**

Kevin argues on appeal that the family court erred in failing to order April to reimburse him for personal property items which he left at the marital residence and which April allegedly failed to return to him. He acknowledges the court found that April testified to giving some of these personal property items to a friend of Kevin's, and that April also admitted to having other items at issue in her possession. He complains that although the court ordered April to return items in her possession to Kevin, the court failed to make orders regarding the items which April had given to Kevin's friend. (Kevin asserts the friend only returned some clothing to him, and he has not received other items back.)

Kevin's complaint about the family court's failing to order reimbursement for items given to Kevin's friend was apparently never raised to the family court, however. His CR 59.05 motion raised no issues about these personal items left at the marital residence.

Moreover, Kevin's appellant brief does not provide a specific citation to the record showing where he requested that the family court order

-5-

reimbursement for personal property given to Kevin's friend rather than to Kevin. *See Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) ("If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved.").[6]

In short, Kevin has failed to show if or how this issue regarding these personal property items was raised to the family court and thus preserved for our review. *See MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 331 (Ky. 2014) ("the critical point in preservation of an issue remains: was the question fairly brought to the attention of the trial court."). Moreover, Kevin did not request palpable error review, *see* CR 61.02, in his appellant brief. Thus, we decline to address the merits of this issue. *See, e.g.*, *J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 153 (Ky. App. 2024); *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

Having declined to address this unpreserved issue, we next turn our attention to preserved issues about property disposition. So, we note the applicable standard of review for such property disposition issues.

---

[6] *See also Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019) ("It is not the function or responsibility of this court to scour the record on appeal to ensure that an issue has been preserved.").

**Standard of Appellate Review for Property Disposition Issues**

Reviewing property disposition issues on appeal: "We review the family court's division of marital assets for abuse of discretion, its classification of property as marital or nonmarital *de novo*, and its factual findings for clear error." *Davis v. Davis*, 720 S.W.3d 622, 625 (Ky. App. 2025). Factual findings supported by substantial evidence are not clearly erroneous. *Id*. at 627. Moreover, we review purely legal issues such as statutory interpretation under the non-deferential *de novo* standard. *Id*. at 628.

Having set forth the appellate standard of review, we consider Kevin's argument that he should have been awarded ownership of or access to some or all pets in the marital household.

**No Reversible Error in Family Court's Awarding the Pets to April**

Kevin contends the family court erred in awarding the pets to April.[7] He admits the family court found April was the sole caregiver and provider for the pets since the parties' separation. But he points out he testified to offering to provide for the pets and wanting to see them. He also argues April arbitrarily refused his offer and denied him any contact with the pets. He further states, that

---

[7] The family court found that at least two of five pets were acquired during the marriage. However, it did not explicitly determine whether any of the pets were marital property.

in his view: "The animals are a marital asset like any other, and should be equitably divided between the parties." (Appellant brief, page 7).

April does not specifically dispute Kevin's assertion that the pets were marital assets in her appellee brief.[8] However, she contends the family court properly awarded the pets to her.

April points out the family court noted the lack of evidence about the monetary value of the pets. She also cites the family court's finding that April testified to having sole possession of and responsibility for taking care of the pets after the separation, which Kevin did not dispute. April also emphasizes she testified to two pets' being a bonded pair and to one animal's being a gift to her nephew, who was in her custody. She suggests this evidence showed she accepted responsibility for the pets and had a stronger claim of ownership than Kevin.

April further argues the family court's factual findings about the pets were not clearly erroneous. She also contends the court made clear its basis for awarding the pets to her. She asserts the court did not abuse its discretion and she argues this Court must not substitute our judgment for that of the family court.

Kevin did not file a reply brief to respond to April's arguments.

---

[8] Though not discussed in the parties' briefs, some may view pets as being more of a financial liability than a financial asset given the expenses associated with pet care and the lack of significant resale value for many pets. Nonetheless, many people may perceive their pets as adding tremendous companionship and emotional value to their lives.

Neither party has cited any case law which specifically addresses a court's awarding pets to one party over another in a divorce. Nor has either party disputed the accuracy of the family court's finding about the lack of evidence about the pets' monetary value.

The family court specifically declined to issue any time-sharing orders about the pets in its order denying the CR 59.05 motion. We cannot say this was inconsistent with any controlling authority, especially since neither party has cited any precedent from Kentucky appellate courts about resolving disputes about pets in divorce cases. Moreover, neither party cites any Kentucky statutes which specifically address how to resolve disputes about ownership of or access to pets following divorce.

In sum, Kevin has not cited any controlling authority which shows he is entitled to ownership of or access to the pets.

Especially given this lack of cited authority to support Kevin's argument of entitlement to share the pets along with the undisputed lack of evidence about the pets' monetary value, we discern no reversible error in the family court's ruling on this matter. The family court's findings regarding the pets are supported by substantial evidence. And we discern no abuse of discretion or misapplication of the law in its resolution of this matter. Thus, there is no reversible error in this regard.

Lastly, we address the parties' arguments about the family court's disposition of the marital residence (including equity in this home). To do so, we first identify the applicable standards for family courts' resolution of property disposition issues.

**Standards Governing Courts' Resolution of Property Disposition Issues**

KRS[9] 403.190 sets forth requirements for courts' disposition of property upon divorce, providing in pertinent part:

> (1) . . . the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:
>
> > (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
> >
> > (b) Value of the property set apart to each spouse;
> >
> > (c) Duration of the marriage; and
> >
> > (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.
>
> (2) For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

---

[9] Kentucky Revised Statutes.

(a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

(b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation;

(d) Property excluded by valid agreement of the parties; and

(e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

(3) All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

Our Supreme Court has construed KRS 403.190 as requiring a three-step process for disposing of property upon divorce: "(1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then

assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties." *Travis v. Travis*, 59 S.W.3d 904, 909 (Ky. 2001).[10]

While conducting this three-step process, courts must also keep in mind that some assets will have both marital and nonmarital components. In such cases, courts are obligated to determine marital and nonmarital interests based on the source of the funds. And courts must keep in mind the presumption that property acquired during the marriage (including the increase in value of an asset) is presumably marital unless a statutory exception applies:

> An item of property will often consist of both nonmarital and marital components, and when this occurs, a trial court must determine the parties' separate nonmarital and marital shares or interests in the property on the basis of the evidence before the court. Kentucky courts have typically applied the "source of funds" rule to characterize property or to determine parties' nonmarital and marital interests in such property.

---

[10] The family court did not closely follow the three-step process outlined in *Travis*, 59 S.W.3d at 909. For example, it did not clearly identify all marital and nonmarital assets. Instead, it disposed of some assets (including vehicles) without clearly identifying whether these assets were marital or nonmarital. Because the parties' briefs did not clearly point out or seek relief for the family court's failure to identify all marital or nonmarital assets, we decline to vacate the property disposition entirely on this basis. Similarly, we decline to disturb the family court's resolution of issues not challenged by either party—for example, its treatment of the tax refund, vehicles, and the shed and pool. (We also decline to disturb its requiring April to reimburse Kevin for over $11,000.00 in funds used to avoid foreclosure). Instead, we simply resolve whether the family court's judgment must be disturbed regarding the preserved issues specifically raised in Kevin's appeal—namely, the allocation of no equity in the marital residence to Kevin, and the award of all pets to April.

-12-

When the property acquired during the marriage includes an increase in the value of an asset containing both marital and nonmarital components, trial courts must determine from the evidence "*why* the increase in value occurred" because "where the value of [non-marital] property increases after marriage due to general economic conditions, such increase is not marital property, but the opposite is true when the increase in value is a result of the joint efforts of the parties." KRS 304.190(3),[11] however, creates a presumption that any such increase in value is marital property, and, therefore, a party asserting that he or she should receive appreciation upon a nonmarital contribution as his or her nonmarital property carries the burden of proving the portion of the increase in value attributable to the nonmarital contribution. By virtue of the KRS 403.190(3) presumption, the failure to do so will result in the increase being characterized as marital property.

*Travis*, 59 S.W.3d at 909-11 (brackets in original) (footnotes omitted).

### Family Court Erred in Failing to Recognize and Divide Marital Equity in Marital Residence

Kevin contends the family court erred in allocating all equity in the marital residence to April. He contends that despite the family court's disregarding recent appraisals of the home's value as not beneficial to its determinations, there is equity in the marital residence and a portion of the equity is marital.

Kevin points out that marital funds generally include the income earned by either party during the marriage. *See Atkisson v. Atkisson*, 298 S.W.3d

---

[11] Despite the citation to KRS 304.190(3) here, we presume the *Travis* court intended to cite to KRS 403.190(3) but inadvertently transposed numbers in the statutory citation.

858, 863 (Ky. App. 2009) ("all income earned by the parties during the marriage is marital property, except for income specifically excluded by statute."). So, Kevin contends that any mortgage payments made during the marriage by either party from either party's earnings were marital contributions which must be considered in allocating equity between the parties.

In contrast, April contends the family court properly allocated marital assets in accordance with Kentucky law. She acknowledges the marital residence had "both nonmarital and marital characteristics" (Appellee brief, page 5). She notes she acquired the home before the marriage and the home had an outstanding principal mortgage balance of nearly $112,000.00 shortly before the marriage. She asserts she accepted sole responsibility for the mortgage, which remained in her sole name during the marriage. She also points out that she produced a mortgage statement showing that the outstanding mortgage balance on the marital residence (where she continued to reside after the separation) was approximately $91,000.00 as of August 2024.

April asserts the family court equitably allocated the equity in the marital residence, especially since April accepted sole responsibility for the mortgage. April also emphasizes she was ordered to reimburse Kevin for $11,389.00 paid to avoid foreclosure on the marital residence, despite his lack of proper documentation about obtaining such funds from an equity loan on another

-14-

property which he owned prior to the marriage.[12]  She also claims the $11,389.00 paid only prevented foreclosure, and that Kevin failed to show this payment increased the equity in the home.

April suggests that the family court essentially allocated some equity in the home to Kevin by ordering reimbursement of the $11,389.00.  She sometimes refers to the $11,389.00 as Kevin's nonmarital contribution, which would be restored by the reimbursement.

April also contends that the family court properly found that there was no increase in the home's value due to the parties' efforts to modify the residence as opposed to general economic conditions.[13]  *See* KRS 403.190(2)(e).  Thus, she suggests there was no marital interest or equity to divide between the parties.

In contrast, Kevin contends there was marital equity in the residence because marital funds—even those deriving solely from April's income earned at work during the marriage—were used to pay the mortgage.  (This appears to be

---

[12] A checking withdrawal form in the record shows that $11,389.39 was withdrawn from the parties' joint checking account in February 2020—a couple of months after the marriage.  The foreclosure action was dismissed in March 2020.  Again, although April insists that Kevin did not provide proper documentation to prove those funds were his nonmarital property, April did not file a cross-appeal.

[13] Kevin has not specifically argued in this appeal that the family court erred in finding modifications made to the residence during the marriage—including converting a garage to a bedroom area with laundry and remodeling a bathroom along with installing the pool and shed— did not add to the property value.  Thus, we do not disturb the family court's finding that such modifications did not add to the property value.

consistent with Kevin's argument to the family court in his motion to alter, amend, or vacate).[14]

Essentially, Kevin suggests the family court should have recognized a marital interest in the residence due to mortgage payments made during the marriage from marital funds. Kevin contends that any mortgage payments made during the marriage by either party from either party's earnings were marital contributions which must be considered in allocating equity between the parties.

Kevin also argues the family court should have calculated marital and nonmarital equity in the residence pursuant to the rule stated in *Brandenburg v. Brandenburg*, 617 S.W.2d 871 (Ky. App. 1981):

> there is to be established a relationship between the nonmarital contribution and the total contribution, and between the marital contribution and the total contribution. These relationships, reduced to percentages, shall be multiplied by the equity in the property at the time of distribution to establish the value of the nonmarital and marital properties.

---

[14]Kevin asserts he stated in his motion to alter, amend, or vacate that mortgage payments were made during the marriage using marital funds. In his CR 59.05 motion, Kevin challenged the family court's finding that the marital residence was April's nonmarital property "in that the payments made on the house by the Petitioner [April] were made with marital funds." (Record ("R."), page 602). Perhaps Kevin meant to state that April's house payments **during the marriage** were made with marital funds. April presumably made house payments between the 2017 home purchase and the parties' 2019 marriage and such premarital house payments could not have been from marital funds. Kevin also contended in his CR 59.05 motion that there was no "evidence that the Petitioner made any motion for the Respondent [Kevin] to make payments toward the said monthly house payments." (R., page 602). Perhaps Kevin was responding to the family court's finding that April made all house payments after the parties' separation.

*Id.* at 872 (citing *Newman v. Newman*, 597 S.W.2d 137, 137 (Ky. 1980)) (*Newman* defines equity as the difference between the fair market value of real property and the unpaid balance of the mortgage on the property. *See id.* at 139.).

We note that later case law has made clear that application of the *Brandenburg* formula is not always necessary in every situation. For example, in *Travis*, our Supreme Court held that the trial court erred in using the *Brandenburg* formula to determine a nonmarital share of insurance proceeds for the destruction of the marital residence because the presumption that property acquired during the marriage (there, insurance proceeds) had not been rebutted. 59 S.W.3d at 913.[15] The Kentucky high court further held the appellant should have just gotten his nonmarital contribution to acquiring the residence back and the remaining insurance proceeds (after paying off the mortgage) should have been equitably divided as a marital asset under KRS 403.190. *Id.* at 908.

This Court has also held that application of the *Brandenburg* formula is not necessary when there is insufficient equity in a residence to reimburse a party for his or her nonmarital contribution. *Atkisson*, 298 S.W.3d at 863.

Nonetheless, while exact application of the *Brandenburg* formula is not always necessary, courts must still determine the parties' separate marital and

---

[15] The marital residence in *Travis* was purchased and renovated during the marriage with the parties' jointly taking out a $40,000.00 home loan and the appellant contributing $7,500.00 in nonmarital funds. Insurance paid $63,000.00 for the home's destruction. 59 S.W.3d at 905.

nonmarital interests based on the evidence when a property has both marital and nonmarital components. *Travis*, 59 S.W.3d at 909. Typically, this is done using the source of the funds rule. *Id*.

Courts must also consider the reasons for any increase in value of such property with both marital and nonmarital components, keeping in mind the presumption that an increase in value during the marriage is marital. And courts must also be aware that the party claiming an increase in value during marriage is nonmarital bears the burden of proof. *Id*. at 910-11. *See also Crawford v. Crawford*, 358 S.W.3d 16, 21 (Ky. App. 2011).

Despite such authority recognizing a heightened standard for proving that increases in value during the marriage are **nonmarital**, however, the family court indicated it was putting a higher burden on Kevin to show that any increase in value was **marital**, because of his greater experience and/or expertise in property acquisition and management than April.

We recognized it was not improper to hold a party with extensive experience in finance and securities to a higher standard for tracing expenditures of **nonmarital** funds. *See Maclean v. Middleton*, 419 S.W.3d 755, 767-68 (Ky. App. 2014). But here, the family court's placing a greater burden on Kevin for showing a **marital** interest in property is inconsistent with the statutory presumption that property (including an increase in a property's value) acquired during the marriage

-18-

is marital. *See* KRS 403.190(3). Also, placing this greater burden on Kevin is inconsistent with precedent recognizing that the party seeking to show that property is nonmarital has the burden of proof. *See Maclean*, 419 S.W.3d at 767 ("A party claiming that property acquired during the marriage is other than marital property bears the burden of proof.").

The family court's placement of a heightened burden on Kevin contravened statutes and precedent. The family court abused its discretion. *See id.* at 772 (family court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles.").

Moreover, based on the record before us, the court also failed to delineate the marital and nonmarital interests in the marital residence despite this property's having both marital and nonmarital characteristics.[16] The family court erred in treating the marital residence as entirely April's nonmarital property without recognizing any marital equity or interest in this property.

Again, we review determinations of whether an asset is marital or

---

[16] In addition to April's recognition that the marital residence had both marital and nonmarital characteristics, April's counsel did not on appeal dispute there was marital equity in the residence during closing argument to the family court. In fact, she stated April was not opposed to Kevin's being awarded one-half of the marital equity. April's counsel also suggested to the family court that marital equity should be determined by subtracting the original purchase price of $118,000.00 from the residence's present fair market value as determined by the court, noting the existence of three recent appraisals of the home.

nonmarital under the least deferential *de novo* standard of review. *See, e.g.*, *Davis*, 720 S.W.3d at 625.

While the family court recognized that the title and mortgage to the marital residence were solely in April's name, record title does not determine whether an asset is marital or nonmarital. *Sexton v. Sexton*, 125 S.W.3d 258, 264 (Ky. 2004). Instead, whether an asset is marital should usually be determined under the source of the funds rule. *Id.* at 265. Moreover, an asset may often "consist of both nonmarital and marital components" and when this occurs, a court must determine the marital or nonmarital interests in the property based on the evidence before it. *Id.* (quoting *Travis*, 59 S.W.3d at 909).

Certainly, the residence here consisted *partly* of nonmarital components. For example, April had acquired the residence prior to the marriage and presumably made some mortgage payments during the two years prior to the marriage. Although April acquired the residence prior to the marriage, payments on the mortgage were made with marital funds during the marriage. *See Brandenburg*, 617 S.W.2d at 872 (court erred in concluding real properties purchased by one spouse prior to marriage were entirely nonmarital assets because "payments on each of these properties were made from marital funds after the marriage").

A court faced with disposing of property having both marital and nonmarital components (such as a home bought before the parties' marriage for which mortgage payments are made with marital funds) has an obligation to recognize the existence of the marital interest as well as the nonmarital interest. A court in such a situation must determine the marital contribution (including marital funds used to reduce the mortgage principal) as well as the nonmarital contribution (including equity before marriage and nonmarital funds used to reduce the mortgage principal). *Id*. And even though no specific formula for doing so is required, the court must determine the relationship between the parties' respective contributions. *Id*. at 873.

The family court failed to determine the relationship between the marital and nonmarital contributions here. And contrary to its determination that the property was an entirely nonmarital asset with no marital equity, the evidence clearly shows that marital funds were used to make mortgage payments and that the unpaid mortgage balance was reduced during the marriage. *See* 15 GRAHAM AND KELLER, KY. PRAC. DOMESTIC RELATIONS LAW § 15:64 (Dec. 2025 Update), (citing *e.g., Brandenburg*, 617 S.W. 2d 871):

> Assume that the wife purchases a home prior to the marriage. If she makes a down payment and mortgage payments before the marriage, she will have a nonmarital interest in the home which equals the sum of the down payment and the [premarital] payments on the mortgage principal. If the wife continued to make mortgage

-21-

payments from her salary after marriage, those payments would be treated as marital contributions to the property's equity, giving the marital partnership an interest in the property.

April purchased the residence (which was later used as the marital residence) for $118,000.00 in 2017. Moreover, documents in the record show she had paid off about six thousand dollars in mortgage principal prior to the parties' marriage. *See* Appellee brief, page 5: "At the time immediately preceding the marriage, the home carried an outstanding principal mortgage balance of $111,982.47." (This is consistent with the principal amount due according to the complaint for foreclosure filed in November 2019.)

Also, evidence showed that between the filing of the foreclosure action just weeks before the parties' marriage and the divorce decree about four years later, the unpaid mortgage balance had been reduced by approximately twenty thousand dollars. While one document showed a remaining mortgage balance of almost $112,000.00 in November 2019, a mortgage statement in the record showed an outstanding mortgage balance of about $91,000.00 in August 2024, a few months before entry of the divorce decree. (This outstanding mortgage balance as of August 2024 is noted on page 4 of April's appellee brief.)

Thus, despite the family court's unchallenged finding that the parties' efforts to improve the marital residence by making modifications to the residence during the marriage had not increased the property's value, the evidence indicates a

marital interest in the residence still exists due to the expenditure of marital funds to pay the mortgage and a resulting reduction in the unpaid mortgage balance during the marriage:

> *Brandenburg* defines equity as the difference between the sale price of real property and any outstanding mortgage on the property. In *Brandenburg*, the husband purchased property known as the Ilhardt property for $15,900. The purchase was made prior to the marriage. After the marriage the property sold for $32,500. At the time of the sale, the outstanding mortgage was $13,471.20. Under the court's formulation, $19,280.80 was the equity in the property. In common parlance equity sometimes refers to reduction of mortgage principal but not to appreciation. The *Brandenburg* concept of equity follows the legal definition and includes both capital appreciation and mortgage reduction.

GRAHAM AND KELLER, *supra*, at § 15:64.[17]

Reduction in mortgage principal has been recognized as a type of property interest, perhaps even when the mortgaged property has not otherwise appreciated in value. *See generally Robinson v. Robinson*, 569 S.W.2d 178, 181 (Ky. App. 1978), *overruled on other grounds by Brandenburg*, 617 S.W.2d at 873. *See also* GRAHAM AND KELLER, *supra*, at § 15:65 (in construing *Robinson*, 569 S.W.2d 178, stating: "The *Robinson* court ruled that one piece of property was wholly marital because the nonmarital claimant had failed to establish any equity

---

[17] *See also* GRAHAM AND KELLER, *supra*, at § 15:64 n.10 (noting *Black's Law Dictionary* defines *equity* as connoting: "the difference between the fair market value of property and any liens on property.").

in the property at the time of the marriage. All of the equity in the property stemmed from postmarital reduction of the mortgage on the property.") (footnote omitted).

Also, as the parties were not legally separated, April's payments on the mortgage during the marriage (even during the separation) were presumably made with marital funds even if she made such payments solely from her own earnings from work. *Atkisson*, 298 S.W.3d at 863.

The family court failed to discuss any evidence of marital funds being used for mortgage payments during the marriage in the divorce decree, despite precedent calling for recognition of a marital interest where marital funds are used to pay the mortgage. *See id.*: "the evidence establishes that the parties used marital funds to pay most of the mortgage payments. Therefore, the value of the residence necessarily includes a marital interest to the extent that it exceeds Kathleen's non-marital contribution." (Footnote omitted.) *See also Brandenburg*, 617 S.W.2d at 872 (agreeing with argument that real properties purchased by one party prior to the marriage were not entirely nonmarital assets with no marital interest because marital funds were used to pay the mortgages on the properties).

Thus, we reverse the family court's determination that there was no marital interest in the marital residence. Upon remand, the family court is directed

to determine the marital interest in the residence and to divide this marital interest in just proportions as required by KRS 403.190.[18]

Though application of the *Brandenburg* formula is not specifically required in every situation, we recommend that the family court adhere to the process set forth in *Brandenburg*, 617 S.W.2d 871. Application of the *Brandenburg* formula is appropriate here because, like *Brandenburg*, the asset at issue is real property which was purchased by a party prior to the marriage and for which marital funds were used to make mortgage payments. *See generally id.* at 872. *Compare Travis*, 59 S.W.3d at 908 (rather than applying *Brandenburg* formula, it was appropriate to simply divide marital property—insurance proceeds on destroyed marital residence—in just proportions after restoring party's nonmarital contribution toward acquiring marital residence).

Moreover, the facts of this case are distinguishable from *Atkisson*, in which application of the *Brandenburg* formula was not called for because there was insufficient equity in the marital residence (due to over-leverage) to reimburse a party for the nonmarital contribution meaning there was "no marital equity to divide by the *Brandenburg* formula." 298 S.W.3d at 863.

---

[18] We are aware that KRS 403.190(1) does not necessarily require the division of **each** marital asset, but simply requires the equitable division of **all** marital property in just proportions. Nonetheless, the marital equity in the residence must be divided in just proportions here since the family court did not award Kevin any clearly identified marital assets to offset against the award of all equity in the marital residence to April.

Here, there appears to be no evidence of additional loans taken out on the marital residence. Also, there is evidence of significant reduction in the mortgage principal due during the marriage as well as evidence of significant appreciation in value based on the $118,000.00 purchase price in 2017 versus 2024 appraisals setting the home's value at $180,000.00 to $250,000.00.

In sum, while we recognize that precedent does not require application of the specific formula set forth in *Brandenburg*, *see* 617 S.W.2d at 873, this case is factually like *Brandenburg*. This case is also distinct from cases in which application of the *Brandenburg* formula was deemed inappropriate. *See generally Travis*, 59 S.W.3d at 908; *Atkisson*, 298 S.W.3d at 863. Thus, application of the *Brandenburg* formula appears appropriate here and is recommended by this Court.

Applying the *Brandenburg* formula, the family court would need to determine the fair market value of the marital residence at the time of the divorce. Given the three recent appraisals in the record, this should not be an unduly difficult task. While the family court is not required to find that the modifications made to the marital residence during the marriage added any value, the family court does need to determine the total current fair market value of the marital residence to apply the *Brandenburg* formula. *See* 617 S.W.2d at 874.

The court would then need to determine total equity in the residence at the time of distribution by subtracting the unpaid mortgage balance from the current fair market value. *See Newman*, 597 S.W.2d at 139; *Brandenburg*, 617 S.W.2d at 872. Next, the court would need to determine the nonmarital contribution—including equity prior to the marriage and use of nonmarital funds to reduce the mortgage principal. *Id.* The court would also need to determine the marital contribution, including the use of marital funds to reduce the unpaid mortgage balance. *Id.*

The court would then need to determine the relationships between marital contributions and nonmarital contributions (*i.e.*, their respective proportions of total contributions). For example, if there were $2,000.00 in nonmarital contributions and $8,000.00 in marital contributions, marital contributions would be 80 percent (.8) and nonmarital contributions would be 20 percent (.2) of the total contributions of $10,000.00. *Id.*

Next, the percentages for marital and nonmarital contributions (80 percent and 20 percent in our example) should be multiplied by the equity in the residence. *Id.* Assuming fair market value of the residence was $200,000.00 and the unpaid mortgage balance is $100,000.00, for example, there would be $100,00.00 in total equity consisting of $80,000.00 in marital equity and $20,000.00 in nonmarital equity. *Id.*

Again, we cannot mandate the use of a particular formula, *see, e.g.*, *id.* at 873, but the family court's failure to recognize any marital equity in the marital interest must be reversed under these facts. Upon remand, we direct the family court to determine the marital equity in the marital residence and to divide this marital property in just proportions.

Further arguments raised in the briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we AFFIRM the family court's judgment concerning the pets and the personal property items at issue. However, we REVERSE the family court's allocation of all equity in the marital residence to April and REMAND for the court to calculate the respective marital and nonmarital interests in this property in accordance with this Opinion and to divide the marital interest in this residence in just proportions.


ALL CONCUR.



BRIEF FOR APPELLANT:

James R. Miller
Shepherdsville, Kentucky

BRIEF FOR APPELLEE:

Amber L. Cook
Shepherdsville, Kentucky